JESSIE FRASER *vs.* THE HOME LIFE INSURANCE COMPANY.

May Term, 1899.

Present: TAFT, C. J., ROWELL, MUNSON, START, THOMPSON and WATSON, JJ.

Opinion filed August 15, 1899.

*Insurance.*—After premiums are received by an insurance company it is too late for it to raise any question as to the form of the receipts or the authority of the agent to receive them.

*Agent Held to Mean Local Agent—General Agent is Company's alter ego.*—The clause in the insurance contract that "no agent has power on behalf of the company to extend the time for paying a premium," refers to local agents, not to general agents, and the latter are presumed to possess authority to transact the business of the company generally, certainly such as relates to the procurement and continuance of risks.

*Insured May Assume that General Agent Has Authority to Extend.—* Even if a general agent have in fact no authority from the company to extend the time for payment of premiums, the insured may assume that he has, unless he knows, or from the circumstances ought to know, the contrary.

*Inference from Course of Trial Below.*—From the fact that the trial court did not submit to the jury to find whether the general agent had in fact authority from the company to extend the time of payment, this court infers that there was no evidence tending to show that the insured had knowledge or notice of such lack of authority if it existed.

*Insurance—Forfeiture for Non-payment of Premium.*—Under a policy which provides that it shall become void upon non-payment of a premium the company is not bound, in case of non-payment, to take any action whatever to work the forfeiture.

*Insurance—Forfeiture for Non-payment of Premium.*—In the present case the court erred in submitting to the jury the question whether the insured was justified by the conduct of the company in believing his policy remained in force without the payment of the premium, for there was no testimony tending to show that he held, or would have been justified in holding such a belief.

*Insurance—Forfeiture for Non-payment of Premium.*—The fact that a company accepts one premium after it has become due and the policy forfeited, may justify the holder in believing that the company would accept another premium under like circumstances, but would not justify him in believing that his policy would remain in force whether he paid the premium or not.

*Evidence.*—A notice sent by the company to the insured that the next regular premium will fall due on a day stated "if such policy is in force on that day," is not, under the circumstances of the present case, evidence that the company regarded the policy as in force.

*Case Distinguished.*—This case is to be distinguished from such as hold that after a policy has become forfeited, the company may waive the forfeiture by levying or suing to collect assessments upon premium notes, for here the insured had given no notes and was under no obligation to pay the premium.

Assumpsit upon a policy of life insurance. Trial by jury, September term, 1897, Washington county, *Tyler,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

*Dillingham, Huse & Howland* for the defendant.

*J. W. Gordon* and *Richard A. Hoar* for the plaintiff.

TAFT, C. J. The plaintiff seeks to recover the amount of an insurance policy upon the life of her husband, for the sum

of $2,000. The policy was dated 27 July, 1891. The premiums were payable quarterly, and all premiums to and including the one due 27 July, 1894, were paid. Upon trial the only question in issue was whether the policy had become forfeited by non-payment of the premium due 27 October, 1894. The first premium was due when the policy issued, and its payment was required in advance.

The application was made a part of the policy and therein it was stated that a note for the first premium would accompany the application. The record does not show what became of the note, but it is fair to infer that it was paid at maturity. Upon what time it was given does not appear but we fail to see how that can be material. After the first premium, the quarterly premiums matured on the 27th days of October, January, April and July. It becomes material to inquire when the respective premiums were paid.

There were twelve renewal premiums paid. It is not shown when those maturing 27 January, 1892 and 1893 were paid; therefore, no inference can be drawn against the defendant by reason of their having been paid when overdue, as that fact does not appear. Of the other ten premiums, two were paid when due; another was paid, when due, by the agent, who paid the company and took the insured's note for it, and the note was paid when one day overdue; two were paid when one day, three when two days, and one, eleven days after maturity. The payment of the last quarterly renewal, 27 July, 1894, was extended to 6 September, 1894, and interest paid for such extension, and payment made four days after the time of extension expired.

It may well be contended that, with one exception, all the premiums were paid when due. As above stated, it does not appear when two were paid, and it is fair to infer they were paid when due. The note which was given for one was paid before maturity. The premium, the payment of which was extended to 6 September, 1894, was paid—it does

not appear when. The receipt was dated the tenth, but payments were generally made by check deposited in the post office at Barre, and it was generally one or more days before the checks were received in New York and receipts given. Such was evidently the case in respect to the five premiums paid one and two days after they fell due. There was but one other premium and that was paid eleven days after its maturity.

This brings us to the consideration of the quarterly premium which became due 27 October, 1894, and which it is conceded has never been paid. The general agent, Mr. Carpenter, wrote the insured 7 November, 1894, in regard to the premium, then eleven days past due, and two days later, the insured wrote Mr. Carpenter (defendant's Ex. 10,) "I find money hard to collect. I enclose you 20 cents in postage stamps to extend time on my policy for a month or so till I get the money to send you. Hope this will be all satisfactory." In reply to this Mr. Carpenter wrote, under date of 12 November, 1894, "Your favor of the 9th inst. with 12 cents interest for extension is at hand. This will continue the policy in force until the 27th November, at which time I trust you will be able to meet the premium, but if not, be sure and let me know before the 27th, that I may be enabled to take care of it for you."

The testimony of Carpenter tends to show that nothing further was ever done by the insured, and that he never heard from the insured again upon the subject. The plaintiff's testimony tended to show that the agent Carpenter extended the time of payment of the October, 1894 premium to 27 December, 1894, the insured dying on the 25th of that month.

On the 17th December, 1894, the defendant sent the insured a notice that a quarterly annual premium on the policy would become due and payable on the 27th January, 1895, if such policy was in force on that day. These are the material facts in the case which it is necessary for us to consider.

It was a part of the contract that in case of non-payment of a premium the policy should be void, and in that case all payments previously made should be forfeited to the company, save in certain excepted cases which it is unnecessary to consider in the case before us.

(1) The various exceptions taken to the testimony in regard to the regularity of the receipts of the premiums, the authority of the agent Carpenter to waive any condition of the settlement, whether the officer signing the receipts was duly authorized to sign them, whether the receipts were in due form, or duly issued, are not tenable; they become immaterial in view of the fact that the premiums were all paid to, and received by, the company. After the premiums were received by the company, it is too late for them to raise any question of the form of the receipts, or the authority of the agent to receive them. The receipts were offered only upon the question of the forfeiture, and the waiver of the payment of the premium in question, and their pertinency upon these questions is hereafter considered.

(2) The plaintiff conceded that the premium due 27 October, 1894, had not been paid, and that she could not recover the full amount of the policy unless she established the fact that the company, by an express agreement, by its agent Carpenter, extended the time of the payment of the October premium until 27 December, 1894, or that the action of the defendant company was such that the insured Fraser might reasonably believe and did believe that the time for its payment had been extended or waived.

There was testimony in the case tending to establish the plaintiff's claim that the time of payment of the premium due 27 October, 1894, had been extended to 27 December, 1894, and interest paid for the two months' extension. The plaintiff testified she had seen a letter from the agent Carpenter to the insured informing the latter that he had sent all the interest and that the time of paying the premium had been extended to 27 December, 1894.

The defendant insists that the letter referred to by the plaintiff was plaintiff's Ex. O. which continued the policy in force until 27 November, 1894, but this question was for the jury.

If the company extended the time in which to pay the premium from the day it became due, 27 October, 1894, for two months, until 27 December, 1894, it cannot now be heard to say that the policy was void for the reason that the premium had not been paid; it could not say there was a forfeiture, for there was none, and the plaintiff can recover. This question was made upon the trial below and fairly submitted to the jury. It was a part of the contract that "No agent has power on behalf of the company . . . to extend the time for paying a premium" etc. The company invoke the aid of this clause and claim that Carpenter had no power to extend the time to pay the premium,—that the company alone could do that.

We hold that the words, "no agent," in the clause referred to mean a local agent, and have no reference to a general agent. Carpenter was a general agent and had supervision over a territory larger than Vermont, and as was said in *Carrigan* v. *Insurance Co.*, 53 Vt. 418, "a general agent, in absence of proof to the contrary, is presumed to possess authority to transact the business of the company generally," certainly such business as relates to the procurement and continuance of risks. He was the company's *alter ego*.

The further claim is made that in fact he had no power to extend the time of the payment of a premium, and the defendant gave testimony tending to show such fact.

The fact that he had no such power would not bind the insured unless the latter had knowledge of it, or ought to have known it from such facts as were within his knowledge. It does not appear that there was any testimony in the case tending to show such knowledge on the part of the insured, nor that he ought to have known that Carpenter had no such power. From the fact that the question whether

Carpenter had such power or not, was not submitted to the jury we must infer there was no testimony in the case tending to show knowledge of such fact on the part of the insured.

Had the question of whether the time of payment of the unpaid premium been extended by an express agreement between Carpenter and the insured, been the only question submitted to the jury, the judgment on the verdict could not be disturbed.

(3) The jury may have found, that there was no agreement to extend the time, but have returned a verdict upon the other question submitted, viz.: the court after submitting the question of whether there was a special agreement to extend the time of payment, said, "if there was not an actual extension of the time of payment, was the course of conduct of the company such as might reasonably induce the belief in the mind of Mr. Fraser that the time had been extended, and was he so induced to believe," and further, "if there was not a definite extension of the time, did the company so act in relation to it, as evidenced by this correspondence that took place—I think all the evidence bearing on the question was by correspondence —was the action of the company such that the insured, Mr. Fraser, might reasonably believe and did believe that the time had been extended?" and further, "it was the right of the company to declare this policy forfeited and void on the failure of the insured to pay this October premium, but if the company elected to let the policy remain in force, to keep it on foot and attempt from time to time to make collection of the overdue premium, it would not be the right of the company afterwards, either before the death of the insured or afterwards, to consider and treat the policy as having lapsed or become void on October, 1894. The company must have made its decision when this payment was due and unpaid. It was its duty to make its decision then, whether to treat the policy as void or let it run along and try to collect the overdue premium."

Upon non-payment of the October premium if the time of payment was not extended, the policy was void and forfeited, as hereinbefore stated. The court recognized the fact and said, "the condition that the premium should be paid when due was a proper condition, at all events it was assented to by the insured." The company was under no obligation to declare the policy void in order to avail itself of the forfeiture. The court erred when it said: "The company must have made its decision when this payment was due and unpaid. It was its duty to make its decision then, whether to treat the policy as void or let it run along and try to collect the overdue premium." There was no testimony in the case tending to show an election on the part of the company to let the policy run and try to collect the overdue premium. The insured was under no obligation to pay the premium and the defendant had no power to collect it. All the testimony in the case upon this point is in the record; it is contained as the trial judge said in the correspondence between the insured and the general agent Carpenter. The letters may be scanned in vain for anything tending to show that the insured believed his policy was in force unless he paid the premium or that would justify him in so believing. On the contrary the correspondence indicates knowledge on his part that the premium must be paid in order to continue the policy in life. He asks in January of the last year to give a note for the premium. The premium due 27 April, 1894, was not paid until 7 May, 1894, paid admittedly, ten days after maturity; but in the letter enclosing the pay he apologizes for the delay and expresses the hope that his payment will be all O. K. This does not indicate a belief that his policy was in force, if the premium was not paid. For the July premium he gets an extension of time in which to pay. What necessity would occur to him to have the time extended, if the policy was in force whether the premium was paid or not? In regard to the last premium which fell due before his death—the

premium which it is conceded was never paid—he applies to have the time extended and it is done and he is informed that the payment of the twelve cents interest continued the policy in force until the 27th November, 1894, and if unable to meet the premium then he is warned to let the agent know so he could take care of it for him.

Is it not far-fetched to say that he believed or was justified in believing that his policy was kept in force although the premiums were unpaid? Was he justified in believing that the premium would take care of itself? Was he justified in believing that it made no difference whether he paid the premium or not, when Carpenter wrote him, "I trust you will be able to meet the premium, but if not, be sure and let me know before the 27th, that I may be enabled to take care of it for you?"

The effect of the non-payment of the premium was to render the policy null, and it so continued until the company by receiving the past due premium waived the forfeiture and restored the policy to life,—in other words, revived it.

The very terms of the renewal receipts indicate that this is the construction to be placed upon the contract, viz.: "It is hereby stipulated by the holder of the policy herein named, that if any payment of premium is received on said policy, after the same has become due, it is on the condition that the party whose life is thereby insured is at the time in good health, and if the fact is otherwise, the policy shall not be revived by such payment."

Had the insured a right to understand that his policy was still in life? It is a dead policy that is revived, not a living one.

The fact that a company accepts a premium after it has become due and the policy is forfeited may justify the policy holder in believing that thereafter the company would accept a premium under like circumstances. The policy-holder might have the right even to compel the company to accept the premium if such had been their course of business,

—provided the party whose life was insured by the policy was at the time in good health; but it would not justify him in the belief that his policy was in force whether he paid the premium or not. To so hold would render such a construction of contracts as odious as it is said forfeitures are regarded.

The only testimony in the case upon the last question submitted was that tending to show that premiums had been received a short time after they matured and exhibit "P." Under objection and exception, Plaintiff's Ex. P. was put in evidence as tending .to show that the company regarded the policy as in force. It was a notice dated 17 December, 1894, that a quarterly annual premium would beeome due on the policy in question 27 January, 1895, "if such policy is in force on that day." The company were under a statutory liability to notify every policy holder of the time a premium on his policy became due, and were obliged to notify him not less than fifteen, nor more than forty-five days, before the premium fell due.

The premium receipts were in the hands of the agents, and whether the policies had lapsed could only be learned by specific inquiry as to each one. To avoid any liability under the statute, and to comply with the law, the only course open to the defendants was to send notices; and to protect themselves in so doing, there was inserted in the notice that the premium would be due on the day named, the condition, "if such policy is in force on that day." The policy may have already lapsed; it might lapse any day after the notice, and if then lapsed it might be revived. There is in the notice itself, a clause from which it may fairly be inferred that the company did not know whether the policy was in force or not, viz.: "This notice is not intended to vitiate any claim for paid up insurance provided for in said policy." After three years the insured was entitled to a paid up policy for $300. The notice was in substance: "We do not know whether this policy, on the day named, will be in force, or

not, but if it is, a premium will be due at that time. But this notice is not intended to vitiate any claim you may have for paid up insurance." It was only in case of a default in the payment of a premium, and the policy becoming null, that a policy holder was entitled to a paid up policy. This exhibit was not admissible to show that the company regarded the policy in force. In connection with the other facts in the case it is not capable of such construction.

There are cases in which it has been held that after a policy of insurance becomes forfeited, and the company levies assessments upon it or brings suit to collect the assessments, it cannot insist upon a forfeiture, but such cases are those in which the company holds the premium notes of the insured, with the right to assess them, and to collect the assessments. Under such circumstances if the company assesses the notes and collects the assessments, it cannot defeat an action to recover a loss under the policy, upon the ground that the policy was null. It cannot say, at the same time, that the policy was in force for the purposes of assessment, and null to defeat a recovery for a loss.

In the case before us there was no obligation upon the insured to pay anything, and no right in the defendant to compel payment. There is a wide distinction between this case and those referred to. A case somewhat analogous to this, and in its features nearer like it than any other to be found in our reports, is *Tripp* v. *Ins. Co.*, 55 Vt. 100. In that case the jury by special verdict found an agreement to waive payment of the premium which was overdue when the insured died. There was no evidence of a special agreement, but the case was submitted "upon the intercourse, the business communications, the business relations between the defendant and Chapman," the insured, to find whether there was an agreement to waive the payment of the premium when due. Whether the evidence in the case

supported the special finding, was a question not made in the case. We infer that it did, and that there was testimony besides that showing the receipts of the premiums after their maturity. The special finding based upon legitimate evidence, warranted the judgment for the plaintiff. The case was twice argued, and on the first hearing, the late *Veazey*, J., saying a judgment for the plaintiff was a legal fraud, the judges save one were for a reversal of the judgment, but upon a re-argument before all the judges, a majority of those sitting, being a minority of the court, ordered an affirmance.

In the case at bar the only testimony upon the last point submitted, was that tending to show the receipts of the premiums a short time, from one to eleven days after maturity, with plaintiff's Ex. P. This testimony did not tend to show that the policy was in force during the time the matured premiums were unpaid, and until it was revived by the receipt of the overdue premiums. Upon the testimony in the case, the last question submitted should have been excluded from the consideration of the jury. The only question proper for their consideration was whether there was an express agreement to extend the time of payment of the October, 1894, premium to 27 December, 1894.

*Judgment reversed and cause remanded.*