## MOHRSTADT v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1902.)

No. 1,594.

LIFE INSURANCE—CONTRACT OF INSURANCE—CONSTRUCTION OF RECEIPT.

An application was given to a local agent of defendant, a life insurance company, for a policy of insurance on a certain plan. The applicant also delivered his note to the agent for the amount of the first annual premium on such policy, and was given a receipt on a form prescribed by defendant, which contained the following provision: "Said policy of insurance to take effect and be in force from and after the date hereof, provided the said application shall be accepted by the said company; but, should the same be declined or rejected by said company, then the full amount hereby paid shall be returned to applicant upon the delivery of this receipt." Defendant declined to issue the policy applied for, but issued one on a different plan, and forwarded it to be submitted to the applicant; but he died before it had been submitted, and without having been notified of defendant's action. *Held*, that the receipt did not con-

stitute a contract for temporary insurance, to remain in force until such time as defendant should act on the application, but was merely a qualified acceptance of the risk,—the insurance to become effective only if the application was approved by defendant,—and that the same having been, in effect, rejected, there was no contract of insurance by which defendant was bound.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

M. R. Smith (William S. Anthony, on the brief), for plaintiff in error.

James A. Seddon (James L. Blair and George T. Weitzel, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. The facts on which the decision of this case hinges are these:

On December 16, 1897, Simon Lederer, a local agent of the Mutual Life Insurance Company of New York, the defendant in error, whose office was at Poplar Bluff, Mo., solicited Thomas A. Thompson to take out a policy of life insurance in his company, with such effect that on that day the deceased, at Dexter, Mo., signed an application for a policy. The application which was so signed described the kind of policy that was applied for, and the amount thereof, as follows:

"I hereby apply for insurance on my life on the life plan; (———) years' payments; twenty-year distribution. Amount, $5,000."

The annual premium on such a policy as was described in the application, according to the company's table of rates, amounted to $102.50. Contemporaneously with the signing of the application, the deceased executed and delivered to the agent his note for $102.50, representing the amount of the first annual premium; and a receipt was delivered to the deceased by the agent, which was in the following form:

"The Mutual Life Insurance Company of New York. Baker Brothers, General Agents, No. 421 Olive St., St. Louis, Mo.

"Am't Premium, $102.50.                        Insurance, $5,000.
"No. 5,260.                                    Dexter, Dec. 16, 1897.

"Received from Thomas A. Thompson one hundred and two and ⁵⁰/₁₀₀ dollars, for the first annual premium on his application for a policy of insurance in the Mutual Life Insurance Company of New York, for five thousand dollars, on the life of Thomas A. Thompson. Said policy of insurance to take effect and be in force from and after the date hereof, provided the said application shall be accepted by the said company; but, should the same be declined or rejected by said company, then the full amount hereby paid will be returned to applicant upon the delivery of this receipt. This receipt will be void when applicant is notified that a policy has not been issued, and shall not be valid for any other consideration than cash actually paid.

                               "Baker Brothers, Gen'l Agents,
                                      "By Simon Lederer."

Across the face of this receipt was the following indorsement:

"Countersigned at Dexter, Mo., by Simon Lederer. This receipt is void if issued after January 31, 1898."

The application so signed by the deceased was forwarded, together with the medical examination, to the general agents of the company at St. Louis, Mo., and thence to the home office, in New York, for

acceptance or rejection by the company, according to the usual course of business. The application and medical examination were received at the home office December 20, 1897. The company declined to issue such a policy as was described in the application (that is to say, a policy "on the life plan; twenty-year distribution"); but it did make out a policy on what is termed the "endowment," as distinguished from the "life," plan, the premium whereon was greater, amounting to $243.50 annually. This policy was mailed to the company's agents in Missouri, to be submitted to the deceased; but, when it reached the local agent at Poplar Bluff, it seems to have been accompanied with no letter of explanation, and as it was not the kind of policy applied for, and called for a higher rate of premium, the local agent wrote to the company for an explanation, and was advised that it was the best the company could offer; the company declining to issue a policy on the life plan at the lower rate, because of the early death of some of the decedent's ancestors. Before the endowment policy was tendered to the deceased for his acceptance or rejection, and before he was aware that such a policy had been mailed to the local agent, he died, or committed suicide; his death taking place about January 13, 1898. The endowment policy was thereupon returned to the company and canceled, but it seems that after Thompson's death his widow tendered the amount of the premium on the endowment policy, to wit, the sum of $243.50, and demanded the delivery of that policy, but the tender of the money was rejected. On this state of facts, concerning which there was no dispute, the trial court directed a verdict for the defendant. The question to be determined by this court is whether such a direction was proper.

We are of opinion that the execution of a policy on the endowment plan by the defendant company, and the mailing of such a policy, to be submitted to the deceased, cannot be construed as an acceptance by the defendant company of the application or proposition for insurance which was submitted in the first instance by the deceased, but that it was, in legal effect, a rejection of such proposal, even if it had been rejected in no other way. The deceased offered to enter into a contract of insurance of a special kind; that is to say, to take a policy on which premiums in the sum of $102.50 should be paid annually during his lifetime, such dividends as accrued thereon to be paid or distributed at the expiration of 20-year periods. The company, on its part, by the execution of the endowment policy, proposed to enter into a contract of a widely different character,—one in which the policy was to be fully paid up in 20 years; each annual premium being $243.50, or more than twice the amount of the annual premium which the deceased had proposed to pay. The contract evidenced by the endowment policy could not become binding upon either party until it was submitted to the deceased, and accepted by him as a substitute for the contract which he had proposed to enter into. In other words, it was a counter proposition for a different kind of insurance; and as it did not reach the deceased in his lifetime, and was not accepted by him, and could not be accepted by any one in his behalf after his death, the minds of the parties never met upon such a contract as the company proposed. Travis v. Insurance Co., 43 C. C. A. 653, 104 Fed.

486, and cases there cited; Insurance Co. v. Young's Adm'r, 90 U. S. 85, 23 L. Ed. 152.

Such difficulty as we have encountered in the case arises over the interpretation of the foregoing receipt, dated December 16, 1897, sometimes termed a "binding receipt." If the true construction of that receipt be that Thompson was to be regarded as insured in the sum of $5,000, at an annual premium of $102.50, until such time as the company had considered his application, and announced its determination to accept or reject the risk, then, in our opinion, the company could not terminate the temporary risk so assumed by the receipt otherwise than by a notice, brought home to the insured in his lifetime, that his proposition was rejected. In that view of the case, the duty of giving such a notice would rest upon the company, and the risk would continue until the duty was discharged. On the other hand, if the true construction of the receipt be that the risk was to commence on December 16, 1897, if the application for insurance on the terms proposed was accepted at the home office, and that in no event was the deceased to be regarded as insured until the application was scrutinized and accepted, then no right of recovery was shown, according to our view of the testimony, because it is clear that the company did reject the application for insurance on the terms proposed, and took the proper steps to advise the deceased of the fact with reasonable diligence. The receipt, as it will be observed, contains the stipulation, "said policy of insurance to take effect and be in force from and after the date hereof, provided the said application shall be accepted by said company." The natural interpretation of this clause would seem to be that the word "provided" was used, as it generally is, in the sense of "if," and that the risk was to take effect as of the date specified "if" the application, on examination and approval at the home office, was accepted, and only in that event. When that was done the company was willing that the risk should commence as of the date of the receipt, although the execution of the policy, embodying all of the terms of the contract, might be delayed for a considerable period. The opposite construction of the receipt, above suggested, not only runs counter to the usual meaning of the words employed to express the agreement of the parties, but it in fact arms local agents with a power not usually intrusted to them,—to saddle the company with large liabilities for temporary insurance before the chief medical officers of the company have had any opportunity to examine and approve such risks. A receipt identical in form with the one now under consideration, and issued by the same company, was before the supreme court of the United States for construction in a case heretofore cited (Insurance Co. v. Young's Adm'r, 90 U. S. 85, 106, 23 L. Ed. 152); and the court held, as we construe the opinion, that a receipt in such a form is not an absolute assumption of a risk temporarily (that is to say, until such time as the application is accepted or rejected), but that it is a qualified acceptance; the risk taking effect only in the event that the application is accepted, and that the company elects, after examining it, to issue such a policy as is applied for. The language of the court in that behalf was as follows:

"The receipt of the 5th of June was the initial step of the parties. It reserved the absolute right to the company to accept or reject the proposition which it contained. There was a necessary implication that, if it were accepted, the response and acceptance were to be by a policy in conformity with the terms specified in the receipt, as far as they extended, and, beyond that, in the usual form of such instruments as issued by the company. But it was clearly within the power of the company, under the condition expressed, wholly to reject the application, without giving any reason, or to accept the proposition with such modifications of the terms specified, and of the usual conditions of such policies, as it might see fit to prescribe. The entire subject was both affirmatively and negatively within its choice and discretion. The acceptance was a qualified one, and there was none other."

Learned counsel for the plaintiff in error says that the chief question in the case is whether it was not the duty of the defendant company to notify Thompson that his application for insurance had been refused. With reference to this proposition, it may be said that we have already intimated our opinion that it would have been necessary to notify the deceased of the rejection of his application, provided it had entered into a contract with him for temporary insurance until his application was acted upon; but, as no such agreement for temporary insurance was made or intended, it follows that the company took all of the necessary steps to notify the deceased of the rejection of his proposition and the fact that he died before receiving such notice is immaterial. In the case entitled Commercial Union Assur. Co. v. State, 113 Ind. 341, 15 N. E. 518, there was a complete oral contract of insurance, and notice to the insured was held to be necessary to terminate the contract. And in the case of Halle v. Insurance Co. (Ky.) 58 S. W. 822, the court found that there was a complete oral agreement for temporary insurance and that this contract continued in force pending a proposition by the company to make a different contract than the one applied for, or, in other words, until there had been a final termination of the pending negotiations. The case at bar rests entirely upon the construction of what is termed the "Binding Receipt," and is distinguishable from the cases last referred to for the reason that by the terms of the receipt—from which any contract of insurance existing between the parties must arise—the defendant did not agree to assume any risk on the life of the deceased until it had accepted his application, which application it never did accept.

Finding no error in the record, the judgment of the lower court is affirmed.