MAYFIELD, APPELLANT, *v.* MONTANA LIFE INSURANCE CO. ET AL., RESPONDENTS.

(No. 4,675.)

(Submitted February 6, 1922.  Decided March 20, 1922.)

[205 Pac. 669.]

*Life Insurance—Oral Contract—Validity—Waiver of Conditions—Authority of General Agent.*

Life Insurance—Oral Contract Valid.
 1. In the absence of a statute to the contrary, an oral contract of insurance which contains all the essentials of a contract is valid.

Same—Policy—Waiver of Conditions by General Agent Binding on Company.
 2. A general agent of a life insurance company has the same power to waive conditions upon the fulfillment of which the issuance of a policy is made dependent as has the company.

Same—Policy—Time for Taking Effect—Waiver of Conditions by General Agent Binding on Company.
 3. *Held,* that where the general agent of a life insurance company on writing an application and issuing a receipt for the first year's premium as well as after the physical examination of the applicant, advised the latter that he was then insured and that in case of death his beneficiary would be paid the amount of the policy, and the insured died before issuance of the policy, the agent thereby waived the conditions printed on the receipt to the effect that the insurance applied for should not take effect until approved by the home office, *etc.,* and that his agreement that the insurance was in force from the date of the issuance of the receipt was binding upon the company.

*Appeal from District Court, Fallon County; C. J. Dousman, Judge.*

ACTION by Mabel A. Mayfield against the Montana Life Insurance Company and another. Judgment for defendant on sustaining demurrer to complaint. Plaintiff appeals. Reversed and remanded, with directions to overrule demurrer.

Cause submitted on brief of Counsel for Appellant.

*Messrs. Goble & Goble,* for Appellant.

Oral contracts of insurance have been generally recognized and upheld by the courts. (*Western Assur. Co.* v. *McAlpin,* 23 Ind. App. 220, 77 Am. St. Rep. 423, 55 N. E. 119; *Croft* v. *Hanover Fire Ins. Co.,* 40 W. Va. 508, 52 Am. St. Rep. 902, 21 S. E. 854.)

From the pleadings it must be conceded that the oral contract fulfilled each of the requirements of section 5592, Revised Codes of 1907: (1) It was a contract between H. B. Mayfield and the Montana Life Insurance Company; (2) the rate of premium was $45.05 per annum; (3) the life of H. B. Mayfield was to be insured; (4) his interest was in his own life; (5) he was to be insured against death; and (6) the insurance was to continue for at least one year. In addition to the above statutory requirements, the insured performed all things required of him by the defendant company for its protection and benefit, *viz.,* submitted to the physical examination by the company's examiner and paid the first annual premium.

The defendant company is now estopped to deny any liability upon such an oral contract of insurance, because either the general agent had authority to enter into such a contract, or if not, he acted within the scope of his apparent authority, as far as the insured was concerned. If he had such authority the liability of the defendant company cannot be questioned. If, however, he did not have such authority, but acted within the scope of his apparent power, so far as

the insured was concerned, the overwhelming weight of authority renders the defendant company liable upon the contract. (*Hahn* v. *Guardian Assur. Co.*, 23 Or. 576, 37 Am. St. Rep. 709, 32 Pac. 683; *Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246, 17 Am. St. Rep. 233, 23 Pac. 869.)

A general agent may bind his principal by an act within the scope of his authority although it may be contrary to his special instructions. (Story on Agency, sec. 733; *Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 5; *Lightbody* v. *North American Ins. Co.*, 23 Wend. (N. Y.) 18.)

It has been held that an agent with apparent authority may waive the conditions of a contract of insurance, at its inception, even though such a waiver is expressly prohibited by the terms of the contract itself. (*Sloss Sheffield Steel & Iron Co.* v. *Aetna Life Ins. Co.*, 74 N. J. Eq. 635, 70 Atl. 380; *Leisen* v. *St. Paul Fire & Marine Ins. Co.*, 20 N. D. 316, 127 N. W. 837. Likewise in *Fair* v. *Metropolitan Life Ins. Co.*, 5 Ga. App. 708, 63 S. E. 812, *Forwood* v. *Prudential Ins. Co.*, 117 Md. 254, 83 Atl. 169; *Ruggles* v. *American Central Ins. Co. of St. Louis*, 114 N. Y. 415, 11 Am. St. Rep. 674, 21 N. E. 1000.)

MR. CHIEF COMMISSIONER STARK prepared the opinion for the court.

The complaint, in substance, alleges: That the defendant Montana Life Insurance Company was at the times mentioned, and still is, a corporation under the laws of Montana, and that George M. Gutch was the general agent of said company. That Gutch was engaged in soliciting business for his company, and while doing so it was his general practice and custom as such general agent to represent to prospective and actual patrons of his company that the insurance contemplated was binding from the date the first year's premium was paid, provided the medical examination by the company's examiner was favorable and showed the applicant to be a good risk, and that in the course of such business he had procured many profitable contracts of insurance for said life insurance com-

pany in this state. That on the tenth day of September, 1918, Gutch, as such general agent of the defendant insurance company, insured the life of Horace B. Mayfield in the sum of $1,000, payable to his wife, the plaintiff, by a contract which was partly written and partly verbal. That Mayfield paid the first year's premium on said contract, and thereupon the insurance company executed and delivered to him its binding receipt, as follows:

"No. 4677.                              Sept. 10, 1918.

"Received this day from Horace B. Mayfield the sum of forty-five and 5/100 ($45.05) dollars in cash, in full payment of the first annual premium of $45.05 on a life insurance policy of one thousand dollars applied from the Montana Life Insurance Company, of Helena, Mont. This receipt is issued by the company subject to the terms and conditions printed on the other side hereof.

"[Signed]   Montana Life Insurance Company,

"By J. M. Miller, Secretary.

"Not valid unless signed by George M. Gutch, agent.

"Signed this —— day of ——, 191—.

."[Signed]   George M. Gutch, Agent."

That on the back of the said receipt is printed in small type the following words, to-wit: *"Terms and Conditions.* (1) The applicant agrees to be promptly examined by a regu·lar appointed medical examiner of the company. If the applicant fails to present himself for such examination within a period of 60 days from the date of this receipt, the amount paid by the applicant shall, at the option of the company, be forfeited to the company. (2) The insurance applied for by the terms of this receipt shall take effect upon the date of approval of same at the home office of the company, after the full premium thereof has been paid in cash, otherwise said insurance shall not take effect until the unpaid balance of the premium has been paid to the company or its agent. (3) If the insurance as hereby applied for is not approved by the company within 60 days of the receipt of the com-

pleted application therefor at the Home Office, the amount paid hereunder will be returned to the applicant." That in making this contract said Gutch followed his general custom and represented to Mayfield that said contract was in force from that date.

It is further alleged that the above-mentioned "terms and conditions" numbered 1, 2, and 3 were not considered as a part of said insurance contract by either of the parties thereto, and that they were no part of said contract of insurance, that Gutch as such general agent agreed with Mayfield to have said insurance contract embodied into a written policy of insurance to be executed and delivered to him within a reasonable time, but that the insurance company has negligently and illegally refused to issue said policy.

It is further alleged that on or about September 10, 1918, at the special request of Gutch, as general agent of the insurance company, Mayfield went to Dr. E. P. Colvin, an examining physician duly appointed by and acting for said insurance company, and was duly examined in the manner required by the insurance company, which examination was favorable and of such disclosures and nature as to warrant and justify the insurance as agreed upon and disclosed that Mayfield was a good insurance risk at that time, as contemplated in said life insurance contract, and thereupon and at that time the said Gutch again informed him that he was insured in the Montana Life Insurance Company in the sum of $1,000, and that, in case of his death, his wife would receive from the Montana Life Insurance Company the sum of $1,000, and that said Montana Life Insurance Company would be obligated to pay said $1,000 from that date.

The complaint further alleges that Mayfield was especially desirous of having his life insured at that particular time for the reason that he then contemplated a trip from his ranch in Carter county, Montana, to St. Louis, Missouri, with several carloads of horses, and for the further reason that at that time there was an epidemic of influenza prevalent among

the people in his locality, and that he believed in and relied upon the statements made to him by Gutch and otherwise would not have paid his money or have taken the physical examination, or have had anything to do with the defendants, but would have arranged for insurance with some other company.

It is further alleged that on or about said tenth day of September, 1918, Mayfield started on his trip with said horses; that he contracted the influenza, and as a result thereof died at St. Louis, Missouri, on October 20, 1918; that on the thirty-first day of October, 1918, the plaintiff, wife of the deceased Mayfield, and beneficiary under the alleged contract of insurance, furnished the insurance company with notice and proof of the death of Mayfield, and in all respects has performed the conditions of the insurance contract on her part; but that the insurance company has refused to pay her said $1,000, and denies any liability on said contract. The complaint further shows that the insurance company retained the $45.05 premium paid by Mayfield until some time in the month of December, 1918, when a check for the amount thereof was delivered to the plaintiff by the company, which she declined to accept and afterward returned to the company.

To this complaint the defendants interposed a general demurrer, which was sustained by the court. The plaintiff elected to stand upon her complaint, and judgment was entered against her, dismissing the complaint, from which judgment she has appealed to this court.

The authorities are agreed that, in the absence of a statute [1] to the contrary, an oral contract of insurance which contains all of the essentials to a contract is valid. (14 R. C. L. 880; 1 Cooley's Briefs on the Law of Insurance, 364; Kerr on Insurance, sec. 29.)

It is to be observed that the entire transaction between the [2] applicant, Mayfield and the defendant insurance company was carried on through George M. Gutch, alleged to

be a general agent of the company, and all of his acts, statements and declarations with reference to the contract under consideration are to be viewed in the light of this relation.

In the case of *Fraser* v. *Home Life Ins. Co.*, 71 Vt. 482, 45 Atl. 1046, the question was presented whether an extension of time for payment of a premium on a life insurance policy had been made so as to bind the company. The policy contained a provision to the effect that "No agent has power on behalf of the company * * * to extend the time for paying a premium." The extension had been granted by a general agent, and the court, in holding that the company was bound, said: "'A general agent, in absence of proof to the contrary, is presumed to possess authority to transact the business of the company generally,' certainly such business as related to the procurement and continuance of risks. He was the company's *alter ego.*"

In 3 Cooley's Briefs on the Law of Insurance, page 2478, speaking of the authority of agents to waive conditions and forfeitures, it is said: "The extent of an agent's power to waive conditions and forfeitures is, of course, dependent on the extent of his authority to act for the insurer. If he is a general agent, his power to waive conditions and forfeitures is, according to the weight of authority, coextensive with that of the insurance company itself." And in support of the text the author cites a long line of authorities.

While some of the authorities cited are cases involving fire insurance contracts, so far as the question involved in this case is concerned, that is immaterial, for in the authority last referred to, at page 2479, it is said: "With reference to waiver, no distinction seems to be made between the power of a general agent of a life insurance company and that of a fire insurance company."

In the case of *Halle* v. *New York Life Ins. Co.*, 22 Ky. Law Rep. 740, 58 S. W. 822, it appeared that "Joseph Halle was a citizen of the city of Manaos, Brazil, South America, and on September 21, 1892, at the solicitation of one Garcia,

general agent for the appellee company, applied to that company for an insurance on his life in the sum of 20,000 milreis, Brazilian · currency, or about $10,920. The required medical examination was made, the application duly forwarded, and the first semi-annual premium paid to the financial agents of the company. The following 'conditional receipt' was then delivered to the assured: 'Conditional Receipt. No. Z17,285. Age 40 years. Amount, reis 20,000,000, 3,000. Table A. Insurance, ordinary tontine. Premium, 459,000rs. 462,000. Payable half yearly. Manaos, Sept. 21, 1892. Received from Mr. Joseph Halle the sum of four hundred and sixty milreis, Brazilian money of the United States, to be applied to the first half-yearly premium on an insurance of twenty-thousand milreis, Brazilian dollars, on the life of the same, for which a formal application is made to the New York Life Insurance Company, provided that said application be accepted by said company, and that a policy be issued by virtue thereof. If said insurance is issued, it should begin on September 21, 1892, subject to the conditions and clauses of the policies of the said company. It is further understood and agreed that, if the company does not issue the policy consistently with said formal application, the above-mentioned sum will be refunded to the bearer of this receipt, and in exchange for it. No one except the president, vice president, second vice president, or actuary is authorized to make, alter, or cancel contracts or waive forfeitures. This receipt will become null and void if any amendment or erasure is made in the printed form. [Stamp.] The company returns, in case of declining the risk, the amount in reis received, without interest, but without reduction. [Signed] New York Life Insurance Company, Subdepartment of Brazil. C. C. Simmons, Manager. M. Storch, Accountant. Countersigned by Bernardo Bockris & Co., Bankers.' '' This application reached New York on November 22, 1892, but the company neither accepted nor rejected it. Instead, it made out two policies on a different plan, which were forwarded to the company's bankers to be submitted

to the applicant. In March, 1893, Halle called on these bankers to make the second payment on his policy, and then first learned of the proposed change in his insurance. He immediately wrote the company, declining to accept the policies, but before any answer to his communication was received he died. The company declined to pay the death claim upon the theory that no insurance had been effected as the minds of the contracting parties had never met, whereupon suit was brought by the widow and children of Halle. At the trial, to quote the language of the court: "It is shown, by satisfactory and uncontradicted proof, that it was agreed between the agent and appellant (applicant) that his insurance should begin on the date of the receipt when the first premium was paid." The defendant company prevailed in the lower court, but on appeal the decision was reversed, and it was held that the plaintiffs were entitled to recover the insurance money in dispute. In commenting upon the fact that the receipt issued at the time the application was made provided in effect that the insurance should only become effective on September 21, 1892, if the application was accepted by the company, the court said: "To the contention that the applicant agreed otherwise in the application, and that no officer or agent other than the president, vice president, etc., could make special contracts, it is sufficient to say that the agent Garcia was the general agent of the company, and so signed his name in the application of Halle which was considered by the company. This agent does not testify, and the disinterested witnesses present when the transaction with Halle occurred leave no room to doubt the terms of the contract. It was pressed on the applicant that he stood insured from the very time he paid his money, a consideration of no small moment, in view of the great distance the parties were from the home office, and the length of time which must elapse before permanent insurance could be obtained."

This language is particularly applicable to this case, where it appears from the allegations of the complaint that the ap-

plicant, Mayfield, was "especially desirous of having his life insured at this particular time" by reason of a contemplated journey from his home to St. Louis, Missouri, and also because of the prevalence of an epidemic of influenza in his neighborhood and the positive statement of the general agent of the company made to applicant at the close of the medical examination of the applicant, that he was then "insured in the Montana Life Insurance Company in the sum of $1,000, and that in case of his death his wife, Mabel A. Mayfield, would recover from the Montana Life Insurance Company the sum of $1,000, and that the said Montana Life · Insurance Company would be obligated to pay said $1,000 from that date."

The *Halle Case* is referred to and explained in *Mohrstadt* v. *Mutual Life Ins. Co. of New York*, 115 Fed. 81, 52 C. C. A. 675, when the court, referring to this case, said: "The court found that there was a complete oral agreement for temporary insurance, and that this contract continued in force pending a proposition by the company to make a different contract than the one applied for, or, in other words, until there had been a final termination of pending negotiations."

In a later Kentucky case, *Northwestern Mutual Life Ins. Co.* v. *Neafus*, 145 Ky. 563, 36 L. R. A. (n. s.) 1211, 140 S. W. 1026, the court made reference to the *Halle Case*, and, while disapproving it in part, did not criticise that portion to which we have made reference. The court then said: "It will be observed that in this case it was agreed by and between Halle and the agent of the company having authority to speak for it, and to vary the terms of the application, that Halle stood insured from the date of the receipt, and from the language of the opinion it cannot be doubted that this parol contract between Halle and the agent was in itself sufficient to authorize the court in holding that Halle was insured from the date of his application." The same case is cited in 1 Cooley's Briefs on the Law of Insurance, page 845, as sustaining the statement in the text that "An agreement between the applicant and the agent that the insurance shall

begin on payment of the first premium, and that, if the policy is not issued, the sum should be refunded, may be maintained as an agreement for temporary insurance, to continue until the application should be accepted or rejected.''

According to the allegations of the complaint in this case [3] .Gutch was a general agent of the insurance company, and in that capacity, while transacting business for it, made it a general practice to represent to prospective patrons that the insurance taken out through him would be binding on the company from the date of the payment of the first year's premium and the passing of a satisfactory medical examination, and that the company had enjoyed a considerable amount of profitable business through the activities of this agent. The complaint further shows that these representations were made to Mayfield at the time he paid his first annual premium and took his medical examination and were believed in and relied upon by him.

We hold that under these allegations the general agent, Gutch, was clothed, *prima facie,* with the ostensible authority to, and did, waive the conditions of the receipt issued to Mayfield, .and that his agreement that the insurance should be in force from the date of its issuance was binding upon the company (sec. 7947, Rev. Codes 1921), and therefore that the complaint states a cause of action.

For the reasons above indicated, we recommend that the judgment be reversed and the cause remanded to the district court, with directions to overrule the demurrer.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment is reversed and the cause remanded to the district court, with directions to overrule the demurrer.

*Reversed.*