## PRUDENTIAL INS CO v HOWARD

Ohio Appeals, 1st Dist, Butler Co

No 635. Decided Jan 16, 1935

M. O. Burns, Hamilton, for plaintiff in error.

Clinton Egbert, Hamilton, for defendant in error.

## OPINION

By MATTHEWS, J.

It is noticed here that the plaintiff was asked on cross-examination if he had not

been indicted, tried and acquitted of the murder of Dorain Kircher, and he answered that he had. Had this been competent, there was no issue raised by the pleadings to which it was relevant. A beneficiary who has murdered the insured forfeits all rights under the contract (**Filmore v Metropolitan Life Ins. Co., 82 Oh St, 208; Smith,** Admr., v Todd, Admr., 155 S. C. 323, 70 A. L.R. 1529), but the forfeiture is an affirmative defense and, of course, must be pleaded. 22 O. Jur., §771, p. 869; 5 Joyce on Insurance (2nd Ed.) p. 4940; Rhode Island Ins. Co. v Fallis, 203 Ky., 112; Wendorff v Missouri State Life Ins. Co., 57 A.L.R. (Mo.) 615. No such defense was pleaded. To dispose of this phase of the case it should be stated that the record contains no evidence and no profert that would support such a defense.

At the trial it was undisputed that the defendant's agent solicited the insurance, that Kircher signed the application, that the application was forwarded to the defendant's "Home Office", and that before the final policy of insurance was delivered Kircher had come to his death by violence. He had been found in an unconscious condition in his automobile in Yankee Creek, from ten to fifteen feet lower than the public highway bridge that crossed the creek at that point. The marks showed that the automobile had left the road and gone over the abutments into the creek. Kircher died without regaining consciousness.

There was no dispute that the premium was paid. It was paid by the plaintiff to the agent who had solicited the insurance and was sent by him to the defendant's local office, where it was being held at the time of Kircher's death. The plaintiff testified that Kircher gave him the money with instructions to take it to the agent but that he had no specific knowledge that it was in payment of the premium, although it is manifest from his testimony that he inferred it was for that purpose; and the agent so understood it and gave a receipt reciting that "Received $16.92 on Ord. Pol. in course of issue." The receipt given by the local office to the agent shows that there was no doubt in the minds of the defendant's agent that it was in payment of premium on Kircher's insurance. There was no provision anywhere for the return of the premium under any circumstances. No action was taken on this application by the defendant's "Home Office". An investigation was instituted and this was in progress when Kircher was killed. From the evidence it appears that defendant was slow in investigating. Kircher gave his correct address as R. F. D. 1, Middletown, Butler County, Ohio, but the agency employed to make the investigation asked for more specific information as to the address and by the time this had been obtained from the defendant's agent Kircher was dead. In the application it was recited that Kitcher was a brorher-in-law of the plaintiff who was named as beneficiary. Answers to certain questions indicated that he was unmarried and had no brothers or sisters. His business and residence were given as the same. The amount of insurance was clearly stated as $3,000.00, but there were indications that originally the figure "1" was written and then "3" written over it.

The officers and employees of the defendant testified that it was because of these features of the application that a report from its investigator was required, particularly as to the inconsistency between the statement that he was unmarried and had no brothers or sisters, and the statement that the plaintiff was his brother-in-law. At the trial it was shown that while Kircher was married he had not lived with his wife for more than a year.

The jury returned a verdict for the plaintiff for the amount prayed for and judgment was rendered thereon. It is that judgment which the defendant seeks to have reversed.

In support of the claim that the judgment should be reversed, it is urged that there is no evidence, or insufficient evidence, that the defendant had "approved and accepted" the application. And it is certain that the defendant had not concluded to issue the policy and assume the risk incident to insurance for the indefinite period of Kircher's life. Neither had it concluded not to do so. It had that matter under advisement. It was not bound by the ultimate contract contemplated but not yet executed. Was it bound by any contractual obligation to Kircher when he died?

That an insurance company may be bound by an interim or temporary contract prior to entering into the final contract is clear from the authorities. It is most commonly illustrated by the "binder receipt" given upon payment of the first premium before the issuance of a fire policy. The same principle applies to life insurance and the question in the case is whether the parties intended such temporary insurance. That must be determined in this case by

the language of the application prepared and issued by the defendant, and signed by its agent and Kircher. In it the parties stipulated that: "It is understood and agreed, however, that if at the time of signing this application the full first premium is paid, the insurance shall take effect from the date of this application, in accordance with the provisions of the policy hereby applied for, provided this application is approved and accepted at the Home Office of the Company, in Newark, New Jersey, under the plan for the premium paid and the amount of insurance applied for."

Now what was meant by this provision? Did it mean that unless the defendant had agreed to accept the risk incident to the insurance for the indelinite period of Kircher's life, as it would if it issued the final policy, no protection was afforded at all? If this is what is meant then the language is meaningless because in that event when insurance prior to the issuance of the policy would be of any value to the applicant it would be non-existent. It seems clear that the payment of the first premium was intended to have the effect of giving the insured some protection based on the provisions in the application while the issuance of the final policy was under consideration and regardless of whether the final policy was ever issued. This seems especially true of an application for life insurance accompanied by declarations of the applicant and solicitor in lieu of a medical examination. By these declarations the defendant was assured by the approval of its agent and protected against any liability in the event of any wilfully false statement material to the risk of the applicant; and, of course, any conspiracy to defraud between the applicant and the solicitor would defeat a recovery.

To bring this interim or temporary insurance into operation it was not necessary that the application be approved and accepted in the sense that the insurer had approved and accepted the risk of the final policy, leaving nothing to be done excepting the preparation and delivery of such policy. Construing the language—as we must—under the compulsion of the rule to resolve doubts against the defendant whose composition it is, we think it means only that the Home Office should approve and accept the application as an application conforming to its requirements as to plan, premium and amount. The risk then assumed would be, according to the express provisions of the application, subject to the

same provisions as the final risk under the terms of the policy applied for. Of course the defendant could have refused to proceed with the negotiations for the final policy for any reason—such as stating in the application that the applicant was single when he was married but living apart from his wife, or because he made statements indicating that the beneficiary did not have the insurable interest stated, although as a matter of fact he did have such interest, or because the defendant did not think the address given was sufficiently specific; or it could have refused for no reason at all. But it had not. The interim or temporary insurance was therefore in force at the time of Kircher's death. The policy that was applied for is not in evidence and we therefore do not know all of its terms but by the terms of the application it is made a part of the policy. There would have been available to the defendant to allege and prove if it could, by clear evidence that the insured had made an answer that was wilfully false, that it was fraudulently made and that it was material; and thus avoid liability. Nothing short of this would be a defense under §§9391 **and 9420, GC.** But the defendant alleged no such defense and there is no evidence tending to prove any such.

The subject of interim or preliminary life insurance pending issuance of the formal policy applied for has been considered by courts of the several states in many cases. We shall not attempt to collate them. The result reached has depended on the exact language of the application or receipt. In Reynolds v Northwestern Mutual Life Ins. Co., 176 NW (Iowa) 207, the court considered an application containing language very similar to that in the application in this case. At page 209 the court says:

"There can be no question, under the form of contract in question, but that, if the insurance applied for ever becomes effective, it is as of the date of the medical examination. This is true if the application is accepted and a policy issued. That the contract contemplates that liability of the company will attach before the issuance of a policy is clearly indicated by the parenthetical clause of the contract which makes the insurance subject to the provisions of the company's regular form of policy applied for. The receipt signed by the company's agent and delivered to the applicant for $13.19 recites that this sum is the

amount of the first quarterly premium on such policy. The quarter for which the premium was paid commenced on the date of the medical examination, because that was the date upon which the insurance would have commenced if a policy had issued. With a somewhat similar contract under consideration, the Supreme Court of South Dakota in Albers v Security Mut. Life Ins. Co. (S. D.) 170 NW 159, said:

"If the company did not intend that there should be insurance effective pending the date of the application and the date of the approval of the risk and the issuance of the policy, then the company would be charging and obtaining the full amount of the premium for one year, while the period of actual insurance would be as many days less than one year as there were days intervening between the date of the application and the approval. This would not be dealing honestly with the insured. By the payment of the premium for one year an insured is entitled to insurance for one year."

"We have no doubt that the proviso in the contract relates to all of clause (2) that precedes it, but it is our conclusion that the contract became binding, and the insurance effective, on the date of the medical examination, subject, however, to the provisions of the company's regular form of policy for the plan applied for, and the insurability of the applicant on the date of such medical examination. The insurability of the applicant on the date of the medical examination is, by the contract made the test of the company's liability."

As the policy in the case at bar was a non-medical one, the deferring of the attaching of the risk until a medical examination took place, referred to in the quotation, has no application.

A few of the cases supporting the view expressed in Reynolds v Northwestern Mutual Life Ins. Co., supra, are:—DeCesare v Metropolitan Life Ins. Co., 180 NE, (Mass.) 154; Beaty v Southland Life Ins. Co., 28 SW (2d) 895; Schwartz v Northern Life Ins. Co., 25 Fed. (2d) 555, and cases cited by the court in the aforesaid cases.

In the annotation to the report of De-Cesare v Metropolitan Life Ins. Co., in 81 A.L.R., 327, at 336, the annotator says:

"Where the provision in a receipt is construed as providing temporary protection until such time as the insurer has considered the application and announced its determination to accept or reject the risk, the insurer cannot terminate the risk so assumed otherwise than by notice brought home to the insured in his lifetime that his application was rejected. Mohrstadt v Mutual L. Ins. Co., (1902) 52 C.C.A. 675, 115 Fed. 81 (dictum).

"Such insurance is effective until superseded by a policy, when issued, or terminated by a rejection of the application and notice to the insured. Starr v Mutual L. Ins. Co., (1905) 41 Wash. 228, 83 Pac. 116."

It will be seen from an examination of the foregoing annotation that the decision turned in each case upon the language used construed in the light of the circumstances. A slight change in the language changed the result. Many of the cases, lacking the elements present in the case at bar, were actions in tort based on negligence. Swentusky v Prudential Insurance Co., 165 Atl. 686, relied upon by the plaintiff in error, was that sort of an action as the court pointed out, saying:

"This action is not brought in contract and that makes it unnecessary to discuss the question whether any liability might arise in such a situation as the one before us * * *. Moreover, Swentusky did not pay the 'full first premium' which is made a condition precedent to the promises of the defendant in the application and receipt."

It is not necessary to extend this opinion by pointing out the difference in phraseology of the application or receipt in those cases in which it was held no liability attached, or to point out that in some of them there had been an actual rejection of the application.

Our conclusion in this case is that the parties intended liability to attach. The trial court submitted the case to the jury upon this issue as stated in his charge:

"The question you are to determine is whether or not the alleged contract of insurance was executed—that is, did the defendant by its acts, or conduct or express agreement, approve and accept the application for insurance."

Under our view of the case, no error prejudicial to the defendant was involved in so submitting it. Nor was there any error in giving the special request of plaintiff at the close of the general charge.

For these reasons, the judgment is affirmed.

HAMILTON, PJ, and ROSS, J, concur.