## GENERAL MOTORS ACCEPTANCE COR-PORATION v. KILLINGSWORTH.

### No. 1276.

Court of Civil Appeals of Texas. Waco.
Oct. 13, 1932.

Rehearing Denied Nov. 25, 1932.

A. B. Geppert, of Teague, and A. C. Buckner and John A. Vivier, both of Houston, for appellant.

Walter T. Thomason, of Wortham, for appellee.

GALLAGHER, C. J.

This is the second appeal in this case. The opinion of the court on the first appeal is reported in (Tex. Civ. App.) 37 S.W.(2d) 823.

The suit was instituted by appellee, J. H. Killingsworth, against appellant, General Motors Acceptance Corporation, and Hearne-Wilson Chevrolet Company, hereinafter called Chevrolet Company, both corporations, to recover both actual and exemplary damages for the conversion of his automobile.

Appellee alleged, in substance, that on October 5, 1929, he purchased from the Chevrolet Company a Chevrolet sedan for $853.-50; that the seller accepted his old car at the agreed valuation of $425; that the remainder of the purchase price of the new car, being the sum of $428.50, was to be paid in monthly installments of $36 each, beginning December 5, 1930; that the seller undertook to prepare in triplicate a sales contract embodying said promise of payment; that the seller did prepare one copy of such contract by filling the blanks in its regular sales contract form according to such agreement; that the seller stated to him that the blanks in the two remaining copies would be filled in the same manner; that, relying thereon, he, at the request of the seller, signed the copy so prepared and two additional blank forms of such contract; that the seller delivered to him the completed copy and retained the two signed by him in blank; that the seller, in violation of said agreement, filled out one or more of said forms signed by him in blank as aforesaid so as to make the first installment of deferred payments due December 5, 1929, and one each month thereafter. The provisions of said contract, so far as material herein, were that the deferred payments should begin on December 5, 1930; that such payments should be made at the office of appellant designated by it; that title to the property should not pass to the purchaser until the purchase money had been paid in full; that the assignee of such contract should be entitled to all the rights of the seller thereunder; that the holder thereof might, under certain contingencies, declare all unpaid installments thereon immediately due and payable, and that upon default the car might be seized and sold at public or private sale in satisfaction of such unpaid indebtedness. Appellee further alleged that on or about December 15, 1929, appellant notified him by mail that an installment of $36 was due on said contract, and on or about January 5, 1930, mailed him a second notice, claiming that $72 was then due thereon; that a representative of the Chevrolet Company sent for him to come to the office of said corporation in Wortham and demanded payment of said sum of $72; that they agreed to store the automobile in their garage at Wortham until they could get the matter adjusted with appellant; that they promised him he should not lose his automobile because of the substantial payment he had made thereon; that he relied on such representations and left

his car with them; and that said corporations thereafter converted the same to their own use.

Appellant pleaded a general denial, and that it purchased said sales contract from said Chevrolet Company; that by the terms thereof the first installment became due December 5, 1929; that appellee made default; and that it declared the entire amount due and payable. It specially denied knowledge of or participation in any conversion of said automobile. The present transcript contains no answer by the Chevrolet Company.

The case was submitted to a jury, which, in response to eight special issues submitted to it by the court, found as follows:

(1) The date upon which the first installment was to fall due upon the contract of purchase between appellee and the Chevrolet Company was December 5, 1930.

(2-4) The Chevrolet Company was authorized by appellant to repossess for it said automobile in January, 1930, and in receiving and retaining possession thereof said Chevrolet Company was acting as agent of appellant and not for itself on its own responsibility.

(5) The cash market value of said automobile in January, 1930, was $700.

(6, 7) There was no malice in the act of said Chevrolet Company in taking charge of, converting, and retaining possession of said automobile.

(8) No punitive damages should be awarded.

Based on the foregoing verdict of the jury, and finding of the court from the undisputed evidence that there was still a lien indebtedness in the amount of $428.50 due by said Killingsworth on said automobile, the court entered judgment in his favor against appellant and said Chevrolet Company, jointly and severally, for the sum of $271.50 with legal interest from the date of such judgment.

## Opinion.

Appellant presents assignments of error in which it assails the finding of the jury that the Chevrolet Company was authorized by it to repossess for it appellee's automobile, and that, in repossessing and retaining the same, said Chevrolet Company was acting as its agent. Appellee testified that about December 1, 1929, he received by mail a notice from appellant that $36 was or would soon be due on his contract for the purchase of said automobile, and that about January 1, 1930, he received from appellant a similar statement claiming that $72 was then due; that Mr. Hearne, an officer of the Chevrolet Company, sent word that he wanted to see him; that he went to Wortham and saw Mr. Hearne, who also told him that there was $72 due on his contract and demanded

268

payment; that he promised to try to raise the money by the next day; that he was unable to do so, whereupon Mr. Hearne suggested that he leave the car for a few days and that they would "make it all right with the General Motors"; that he further stated in that connection that he did not want appellee to lose his car because he had already paid too much on it; that he (appellee) did leave the car upon such understanding; that he returned shortly thereafter and found that the Chevrolet Company had gone out of business. There was testimony that said car had been removed to Teague, but nothing further with reference to the same was shown.

Mr. Hearne testified that he was president of the Chevrolet Company at the time appellee purchased the car and at the time he left the same in the possession of said company as above stated; that appellant was a finance company and was connected with the Chevrolet Company, in that it would purchase and carry said company's paper; that appellant did purchase appellee's contract. He further testified: "We did know of any indebtedness against the different contracts because we would get copies of correspondence they would send out, and we would also get copies of delinquent lists. * * * Their custom was to send us a list of delinquent notes, and when we received these delinquent lists of notes, we would see the people about collecting the notes; * * * We did assist them in collecting the notes; we gave them what assistance we could. I am sure we did get a delinquent list sometime in December, 1929, if I remember correctly. I am sure we got one because we got them regularly every time they were sent out."

Appellee introduced a letter received by him from appellant, dated January 15, 1930, peremptorily demanding payment of the sum of $72 so claimed by the 25th of that month on penalty of termination of business relations between them. In such letter appellant advised appellee as follows: "Our Mr. Myrick, field representative, has reported that your collateral on your automobile has been temporarily repossessed and stored with our dealer." Said letter was exhibited to the witness Hearne, who further testified in that connection as follows: "I am sure that we did receive a copy of this letter which counsel has handed to me, as it states here at the bottom that copy went to us. I am sure that Mr. Myrick came to see us about the time we repossessed Mr. Killingsworth's car because he was the territory man at that time and he came to see us every ten days or two weeks, or possibly more often than that, and I am sure that he came to see us about the time we repossessed Mr. Killingsworth's car. I do not remember any conversation I had with Mr. Myrick about this car, how-

ever. I am sure we did have some conversation about the car because the field representative would have the delinquent list and we would go over it and discuss the possibilities of the people who were delinquent taking care of their obligations." Said witness, however, insisted throughout his testimony that, in demanding payment of said sums from appellee and in receiving and storing his car, the Chevrolet Company was acting only in its own behalf and in the protection of its interests as indorser on said contract. He further testified that he left the company on the 15th of January of that year, that the car was thereafter removed to Teague, and that he did not know what had become of it.

The credibility of the witness Hearne and the weight to be given to his testimony under the facts in evidence in this case were jury questions. The jury had a right to accept and credit so much of his testimony as was favorable to appellee and to reject and disregard so much thereof as was adverse to his contention. 17 Tex. Jur. p. 931, and authorities cited in notes 19 and 20. In determining whether the evidence as a whole is sufficient to support the findings of the jury upon the issues under consideration, we must view the same in the light most favorable thereto, discarding all evidence to the contrary. Richardson v. W. C. Bowman Lumber Co. (Tex. Civ. App.) 274 S. W. 349, 351, par. 1, and authorities there cited; Texas Employers' Ins. Ass'n v. Davidson (Tex. Civ. App.) 5 S.W.(2d) 1008, 1010, and authorities there cited. The testimony above recited shows that appellant furnished the Chevrolet Company with a list of all notes upon which payments were delinquent; that Mr. Myrick was appellant's general collector or field man; that he conferred with the officers of said company about the collection of such delinquent payments, including the payments owed by appellee and erroneously claimed to be delinquent; that appellant permitted the officers or representatives of said company to collect or assist in collecting delinquent payments due it; that Mr. Hearne, one of such officers, demanded that appellee pay the sum of $72, which he erroneously charged was then due on appellee's note, and persuaded him to surrender possession of his car, to be held until the matter could be adjusted; that Myrick was cognizant of these facts and reported the same to appellant; and that appellant, as indicated by its letter to appellee, acquiesced in such action and tacitly if not expressly approved the same. Such testimony, viewed in the light most favorable to the findings assailed, is sufficient to sustain the same. Daugherty v. Wiles (Tex. Com. App.) 207 S. W. 900, 901, et seq.; Collins & Douglas v. Cooper, 65 Tex. 460, 464; American Mortgage Corporation v. Spencer (Tex. Civ. App.)

45 S.W.(2d) 301, 304, pars. 3 and 4; Ward v. Bledsoe, 32 Tex. 251, 252, 254.

■■ Appellant assigns as error the failure of the court to define, at its request, the word "agent" as used in a special issue submitted to the jury. It is necessary, in order to determine whether there is merit in appellant's contention, to consider the connection in which such term was used. The court, in the second issue submitted, asked the jury to determine whether the Chevrolet Company was authorized by appellant to repossess for it appellee's automobile; in the third, to determine whether the Chevrolet Company, in receiving and retaining possession of appellee's automobile, was acting as agent of appellant; and, in the fourth, to determine whether the Chevrolet Company, in receiving and retaining possession of appellee's automobile, was acting for itself and on its own responsibility. The word "agent" is defined in Standard Dictionary as "one who or that which acts for another; * * * in law, one who acts in virtue of authority from his principal." The connection in which that term was used in said issues clearly indicates that the same was used in the usual and ordinary sense of one acting for another with authority to do so. The statute (R. S. art. 2189) does not require the court to explain or define every legal term used in framing the issues submitted. It only requires the court to submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and answer the same. Reasonable necessity for explanation or definition of the term used is the proper test. Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570, par. 1; Texas & N. O. Ry. Co. v. Martin (Tex. Civ. App.) 32 S.W.(2d) 363, 367, pars. 3 to 5 (writ refused); Spurlock v. Hilburn (Tex. Civ. App.) 32 S.W.(2d) 396, 398, par. 5, and authorities there cited; Dallas Railway & Terminal Co. v. Bankston, 33 S.W.(2d) 500, 503, 504, par. 5; Id. (Tex. Com. App.) 51 S.W.(2d) 304, 309, par. 13; Lightsey Black & White Cab Corporation v. Littlefield (Tex. Civ. App.) 48 S.W.(2d) 766, 769, par. 5; Magnolia Coca-Cola Bottling Co. v. Jordan (Tex. Civ. App.) 47 S.W.(2d) 901, 903, par. 2. We do not think a juror of ordinary intelligence could have misconstrued the issue in which said word was used, and a specific definition thereof was therefore unnecessary.

Appellant presents assignments of error in which it contends that the court erred in admitting the testimony of appellee with reference to the market value of his automobile at the time he was induced to deliver the same to the Chevrolet Company, and that his testimony as to such value was without sufficient probative force to sustain the finding of the jury on that issue. Appellee purchased a new Chevrolet sedan on October 29, 1929, for the sum of $853.50. On January 5, 1930, he delivered the same to the Chevrolet Company, as hereinbefore stated. The car at that time was in good condition, and had been run only 2,000 miles. He paid for said car in part by the delivery of a secondhand automobile which he owned at the time, and for which he received credit of $425 on said purchase price. Appellee was the only witness who testified to the market value of his car at the trial. He testified that he was familiar with the market value of such automobiles on January 5, 1930; that he had familiarized himself with the prices of automobiles before he purchased the same; that he had investigated the market value of new and secondhand cars both in Wortham and in Corsicana. He testified on voir dire that he had never been in the business of buying and selling used cars and was not a mechanic; that he bought a used car in the summer of 1929, which was the car he gave in part payment for his new car; that he had priced in the market Chevrolets, Fords, and Dodges prior to purchasing the new car, and that several of the Chevrolets so priced were secondhand; that he did not keep up with the reasonable market value of secondhand cars between October 29, 1929, and January 5, 1930. The court then permitted appellee to testify that the cash market value of his automobile at the time he delivered it to Mr. Hearne on January 5, 1930, ought to have been $700.

■ There is no inflexible rule prescribing the exact amount of information concerning sales of similar property in the market in question which must be possessed by a witness before he will be held competent to testify to his opinion or estimate of the market value of the property under consideration. The qualification of a witness testifying to the market value of property is primarily a question for the trial court, and his ruling thereon will not be revised unless it appears that the same was clearly wrong. The issue here under consideration is fully discussed in the case of Rogers & Adams v. Lancaster (Tex. Com. App.) 248 S. W. 660, 661, et seq., pars. 1 to 3, to which and the authorities there cited reference is here made. See, also, Ross v. Wilkerson (Tex. Civ. App.) 277 S. W. 425, 426, par. 2; H. & T. C. R. Co. v. Clement Grain Co., 10 S.W.(2d) 400, 402, et seq.; Merchants Cotton Oil Co. v. Acme Gin Co. (Tex. Civ. App.) 284 S. W. 680, par. 3; International-Great Northern R. Co. v. Motley (Tex. Civ. App.) 18 S.W.(2d) 782, 784, pars. 6 and 7; North River Insurance Co. v. Rippy (Tex. Civ. App.) 23 S.W.(2d) 853, 857, pars. 7 and 8; St. Mary's Oil Engine Company v. Allen-Morrow Company (Tex. Civ. App.) 20 S.W.(2d) 266, 268, pars. 4 and 5; Sparrow v. Tillman (Tex. Civ. App.) 283 S. W. 877, 878, pars. 2 and 3; Northern Texas Trac-

tion Company v. Armour & Co. (Tex. Civ. App.) 290 S. W. 544, 547, par. 3. Appellee's testimony that the car ought to have been worth $700 at the time he delivered it to Mr. Hearne was not without probative force. Testimony with reference to market value, especially of secondhand goods, is ordinarily at least a mere matter of estimate or opinion. G. C. & S. F. Ry. Co. v. Harrell (Tex. Civ. App.) 270 S. W. 187, 188, par. 4; Ætna Insurance Co. v. Mills, 176 Ark. 684, 3 S.W.(2d) 999, 1000, par. 5. The weight of opinion evidence as to the value of personal property is for the court or jury trying the case. Rogers & Adams v. Lancaster, supra; McElwrath v. Dixon (Tex. Civ. App.) 49 S.W.(2d) 995, 997, par. 11; Wagner & Chisholm v. Dunham (Tex. Civ. App.) 246 S. W. 1044, 1046, pars. 4 and 5. Said assignments are overruled.

The judgment of the trial court is affirmed.