GIBRALTER COLORADO LIFE CO. v. TAYLOR et al.

No. 12009.

Court of Civil Appeals of Texas. Dallas.

Oct. 31, 1936.

Rehearing Denied Nov. 28, 1936.

J. L. Goggans and James J. Laney, both of Dallas, for plaintiff in error.

Fred T. Porter and Jack P. Bond, both of Terrell, for defendants in error.

LOONEY, Justice.

At the outset, plaintiff moves the court to strike out defendant's propositions Nos. 1 to 10, inclusive, on the ground that they are mere abstractions. This motion is overruled, as it has been several times held that, since the amendment (Acts 1931, c. 45, § 1) to article 1757, R.S. (Vernon's Ann.Civ.St. art. 1757), propositions are not essential parts of a brief. Standard v. Texas Pacific, etc., Co. (Tex.Civ.App.) 47 S.W.(2d) 443; Robert, etc., Co. v. Bains (Tex.Civ.App.) 57 S.W.(2d) 872; Henderson v. Page (Tex.Civ.App.) 78 S.W.(2d) 293.

W. W. Taylor, beneficiary, sued the Colorado Life Company on its life policy, insuring the life of Dewey B. Taylor, son of plaintiff, to recover the face of the policy, $2,000, and interest, 12 per cent. damages, and a reasonable attorney's fee.

Answering the suit defendant alleged that the annual premium due April 4, 1933, was not paid at maturity, but that within the days of grace allowed, defendant granted an extension to October 4, 1933, the insured agreeing to pay $1 at the time the extension agreement was made, and $2 on each of the following days: June 4th, July 4th, August 4th, September 4th, and on October 4, 1933, the sum of $41.39, plus interest. The agreement stipulated that, upon the failure of insured to pay any extension fee on its due date, or within the twelve days of grace allowed, all rights under the policy would be forfeited. Defendant alleged that insured failed to pay the extension fee of $2 on June 4, 1933, or within the grace period allowed, therefore the policy lapsed and all rights thereunder were forfeited; but notwithstanding this fact there was received at defendant's Dallas office on July 11, 1933, a remittance by plaintiff of $4, purporting to be the amount of the extension fees due June 4 and July 4, 1933; that such remittance was made after the fatal shooting and wounding of insured, which occurred July 10, 1933, the remittance reaching defendant's Dallas office on July 11, 1933, after the insured's

death; but that plaintiff made no mention of the wounding and death of insured in connection with the remittance, thus attempting the perpetration of fraud upon defendant. Defendant alleged that, on receipt of the remittance, being a check payable to the order of defendant in the sum of $4, drawn by plaintiff on the First National Bank of Wills Point, Tex., defendant's cashier in charge of its Dallas office, ignorant of the death of the insured, collected the check, placed the proceeds to the credit of defendant in a Dallas bank, and directed a letter to the insured acknowledging receipt of the remittance, stating in the letter that, although the policy lapsed on June 16, 1933, it could be reinstated, inclosed for that purpose a short form application for reinstatement, stating that in the meantime the amount of the remittance would be held in trust; that the application for renewal was never made, because of the death of the insured, and that, after learning the facts just detailed, defendant tendered to plaintiff the amount of the remittance— $4—which being declined, defendant continued the tender in its answer herein and deposited the amount in the registry of court for the benefit of the person shown to be entitled to receive same.

In a supplemental petition, plaintiff alleged that the policy had not lapsed, as alleged by defendant, but was in full force and effect on July 10, 1933, the date of the death of the insured, in that, defendant in writing waived payment when due of the $2 extension fee due June 4, 1933, and extended the time for payment to July 12, 1933; and that the fee was paid and accepted by defendant prior to July 12, 1933. Plaintiff also alleged that, on or about July 7, 1933, he sent defendant a check for $4, in settlement of the extension fees due in June and July, having on its face a notation indicating the purpose for which it was sent; that defendant received the check at its Dallas office, collected same and deposited the proceeds to its credit in the Republic National Bank & Trust Company of Dallas, thus waiving the alleged default, and the right to forfeit the policy because of failure to pay when due the June extension fee.

Replying to plaintiff's supplemental petition in regard to waiver, defendant alleged that, on July 11, 1933, when the check for $4 was received at its Dallas office, its cashier in charge, being ignorant of the death of the insured, addressed a letter to him, acknowledging receipt of the remittance, stating that the policy had lapsed on June 16, 1933, but that same could be reinstated on application and, for that purpose, inclosed a short form application to be used, stating further that the remittance of $4 would be held in trust, awaiting final disposition of the application for reinstatement. Defendant also denied having waived the default or the forfeiture.

Mrs. Ruby Elvine Taylor, widow of the insured, intervened for herself and the two minor children of herself and deceased husband, claiming that plaintiff had no insurable interest in the life of the insured, and that the proceeds of the policy should be adjudged to interveners, save and except any indebtedness insured owed plaintiff and the amount of any premiums paid by plaintiff on the policy. Judgment having gone against interveners, and no appeal therefrom perfected, we do not deem it necessary to take further notice of their connection with the case.

At the conclusion of the evidence, defendant moved for an instructed verdict, which being denied, the case was submitted to a jury on special issues responsive to pleadings and evidence, in answer to which they found, in substance, that there was an agreement by defendant, extending the time for payment of the second year's premium to October 4, 1933; that plaintiff's check to the order of defendant for $4, in payment of the extension fees due June 4 and July 4, 1933, was accepted by defendant, through its agent and representative, with knowledge that the insured was dead; and further that defendant, through an authorized agent or representative, agreed in writing that plaintiff or insured could have until July 12, 1933, to pay the premium maturing June 4th, and that prior to July 12th, plaintiff paid said premium. The jury also found $500 to be a reasonable attorney's fee for services rendered in prosecuting the suit to judgment, and that $250 would be a reasonable fee for attention to the case on appeal.

After overruling defendant's motion for judgment non obstante veredicto, the court rendered judgment for plaintiff against the defendant for $2,000, the face of the policy and interest, 12 per cent. damages, $500 attorney's fee for services rendered to and including the trial providing also that, in the event of an appeal, plaintiff would be entitled to an additional attorney's fee of $250 for services incident to the appeal.

Defendant's motion for a new trial having been overruled, notice of appeal was given, and the case is now before us for review on petition for writ of error by the Gibralter Colorado Life Company, alleging, among other things, the change of the name of the Colorado Life Company to that of the Gibralter Colorado Life Company.

Two theories are presented by pleadings, proof, and findings of the jury on either of which if tenable the judgment below may be affirmed. The first is: That defendant agreed in writing to extend the time for payment of the extension fee due June 4, 1933, to July 12, 1933, and that prior to that date the fee was paid. The second is: That plaintiff remitted his check for $4 payable to the order of the defendant, containing on its face the notation, "June and July payments on note policy #34205 Dewey Taylor," was received at defendant's Dallas office by its cashier in charge, who at the time knew the policy was in a lapsed condition, and, as found by the jury, also knew that the insured was dead and with this knowledge failed to return the check, but accepted same in settlement of the overdue premium, and appropriated its proceeds to the use and benefit of the defendant.

 Defendant assigns error on the action of the court in permitting witnesses to testify, over objections urged, to the contents of a letter (not produced because destroyed) granting an extension to July 12, 1933, for payment of the extension fee due June 4, 1933, purportedly written by T. M. Watlington, manager of defendant's renewal department, and received by plaintiff about July 5, 1933; the contention of defendant being that, the letter, the contents of which was testified to, not being before the court its authenticity could not be established by comparison of handwriting; and not being properly authenticated, testimony as to its contents was inadmissible.

The record discloses that the insured was the only child of plaintiff and his wife; that at the time of his death insured was engaged in operating trucks, and while not divorced he and his wife were not living together, and their two children were staying on the farm with their grandparents (Mr. and Mrs. Taylor); that all mail from defendant to the insured was left in the rural mail box of his father, and was opened and read by insured's mother and father. That about April 21, 1933, plaintiff begun a correspondence with defendant, seeking an extension of the annual premium due in 1933, in answer to which, through T. M. Watlington, manager of the renewal department defendant wrote insured, giving instructions as to how such extension could be procured, and inclosed blanks to be used for that purpose; the extension was later agreed upon. Although conflicting, the evidence tends to show that some time after June 16, 1933, plaintiff or the insured received a letter from the defendant, stating that the policy had lapsed in regard to which Mrs. Taylor, mother of insured, testified that on receipt of the letter she immediately wrote defendant, insisting that the policy had not lapsed, according to her understanding had with the agent, to the effect that the payment theretofore made would carry the policy for a month or two and that it was in response to this letter, written by Mrs. Taylor, that the letter purportedly from defendant, received about July 5th, was written, stating that, while the policy did not take care of itself yet an extension would be granted to July 12, 1933.

Although T. M. Watlington denied having written any such letter, four witnesses —Mr. and Mrs. Taylor, a Mrs. Walsh, and a Mr. Clemmons—testified that on July 5th such a letter was received through the mail at the home of Mr. Taylor; that it was written upon a letterhead purportedly of defendant, similar in all respects to a letter admittedly written by Mr. Watlington (found at page 69 of the statement of facts); and that the letter received July 5th was similarly signed. The rural mail carrier testified that, during the first week of July, he delivered to plaintiff several letters addressed to plaintiff or the insured, purportedly from the Colorado Life Insurance Company.

We recognize as correct the doctrine invoked by the defendant, that is, where testimony of experts is offered to establish by comparison the genuineness of a signature or of handwriting, the signature or handwriting, the genuineness of which is under inquiry, must be produced, else no basis for comparison is afforded. See Mugge v. Adams, 76 Tex. 448, 13 S.W. 330; Robertson v. Talmadge (Tex.Civ. App.) 174 S.W. 627, 629; Kveton v. Keding (Tex.Civ.App.) 286 S.W. 673, 677. While this is true, it has never been held that, the genuineness of a document may not be either established or disproved otherwise by competent evidence, and especially by

circumstantial evidence. See 28 Tex.Jur. p. 401 § 10; International Harvester Co. v. Campbell, 43 Tex.Civ.App. 421, 96 S.W. 93, 94; Sun Mfg. Co. v. Egbert & Guthrie, 37 Tex.Civ.App. 512, 84 S.W. 667; Denby Motor Truck Co. v. Mears (Tex.Civ.App.) 229 S.W. 994, 997. 28 Texas Jurisprudence, supra, announces the following doctrine: "In accordance with general rules, elsewhere noticed, it is well settled that the existence, execution, loss and contents of an instrument alleged to have been lost may be established by parol as well as by documentary evidence, and by circumstantial as well as direct evidence. In fact, it has been said that the courts show greater liberality with respect to the admission of circumstances in proving lost instruments than in other cases, particularly when the document is an ancient one. * * *" The following pertinent language was used by the court in Denby Motor Truck Co. v. Mears, supra; the court said in part, "While the signature of the party writing the letter must be proved or its execution established before it is admissible in evidence, this may be done circumstantially, and when the circumstances are such as to indicate they are the letters of the party purporting to write them, the court may admit them as evidence." We overrule all assignments pertaining to this question.

Defendant complains of the submission of the following issue: "Q. Do you find from a preponderance of the evidence that the defendant company accepted the plaintiff's check for $4.00 in settlement of the extension fees due and owing for the months of June and July, 1933?" Its contention being that the evidence showed that the conditional acceptance of the check was not in satisfaction of the extension fee.

The record discloses that defendant sent Miss Lunney from Denver and put her in charge of its Dallas office, as cashier for the accommodation of its Texas policyholders. Premiums remitted to the Dallas office were by the cashier received, receipted for, collected, and placed to the credit of defendant in a local bank, and report thereof made to the home office at Denver. The check in question for $4 was dated July 7, 1933, drawn by plaintiff on the First National Bank of Wills Point, payable to the order of defendant, and had on the lower left corner this notation: "June and July payments on note policy #34,205 Dewey Taylor," was received by Miss Lunney on June 11, 1933, by her was deposited, together with other funds belonging to the defendant, to its credit in a local bank. Miss Lunney testified that she knew the policy was in a lapsed condition at the time she received and collected the check, and although she testified that she did not know of the death of the insured, yet the evidence, in our opinion, raised the issue and, on submission of the jury found that defendant, through its agent, knew of insured's death. She also testified that plaintiff's check was in payment of the June and July extension fees, and that she accepted same as such and, on this issue, the jury also found that the defendant accepted the check in settlement of these extension fees. Miss Lunney was asked: "Q. When you received that check, what disposition was made of it? A. I deposited it and the proceeds were in trust." She also testified that she wrote a letter to the insured, inclosing a short form application for reinstatment to be returned, and that the matter would be referred to the home office. However, aside from the testimony of Miss Lunney, to the effect that she accepted the check in payment of the June and July extension fees, we think her conduct was tantamount to an acceptance of the remittance in payment of the overdue extension fees. As before shown, the check had upon its face this language: "June and July payments on note policy #34,205 Dewey Taylor." In this situation, defendant was not authorized to appropriate the proceeds of the check, except on the terms expressed on the face of the check. Miss Lunney knew the policy had lapsed and, as found by the jury, although denied by her, knew insured was dead. It was only by virtue of the insurance contract that defendant had the right to appropriate the proceeds of the check to its own use and benefit, and, in so doing, necessarily recognized the continuing validity of the contract, waived the forfeiture, if any existed at that time, and we think is estopped to urge forfeiture as a defense. If defendant did not intend to be bound by the terms imposed by the language on the face of the check, that is, its acceptance as payment of past-due extension fees, the proposal should have been rejected and the check returned; but having collected and appropriated to its own use and benefit the proceeds, defendant should not now be permitted to say that the fund is held in trust awaiting the result of an application for reinstatement. Stetson-Preston Co. v. H. S. Dodson & Co. (Tex.Civ.App.) 103 S.W.

685, 686, presents a case where a check was forwarded with a letter stating that it was to be in full settlement of an account. On its receipt, the recipient notified the sender that the check would not be received in full settlement, but that the amount would be entered as a credit upon the account. Passing upon the situation thus presented, the court said: "They accepted this check and appropriated the funds that arose from cashing it. It is true at the same time they wrote a letter to the appellees, in effect stating that they would not be bound by this settlement, but that they would credit and had credited the sum received on appellees' indebtedness. There was existing prior to that time a controversy between the parties as to what the amount was. * * * The appellants were only authorized to accept and appropriate the draft in accordance with the terms under which it was sent. They were distinctly informed that it was sent in full payment of a settlement made with McClellan; and, if they did not intend to be bound by such settlement, they should have repudiated the transaction in toto and returned to the appellees the draft received." To the same effect see: Bergman Produce Co. v. Brown (Tex.Civ.App.) 172 S.W. 554; Hunt v. Ogden, 58 Tex.Civ.App. 443, 125 S.W. 386; Olson v. Burton (Tex.Civ. App.) 141 S.W. 549; Clopton v. Caldwell County (Tex.Civ.App.) 187 S.W. 400; Moore & Co. v. Armour & Co. (Tex.Civ. App.) 226 S.W. 689; Payne & Tippin v. W. E. Stewart Land Co. (Tex.Civ.App.) 234 S.W. 254; First State Bank v. Knapp (Tex. Civ.App.) 3 S.W.(2d) 468; Root & Fehl v. Murray Tool Co. (Tex.Com.App.) 26 S. W.(2d) 189, 75 A.L.R. 902; Kean v. Southwest Nat. Bank (Tex.Civ.App.) 50 S.W. (2d) 839; Bailey v. W. O. W., 116 Tex. 160, 286 S.W. 456, 457, 288 S.W. 115, 47 A.L.R. 876; American Nat. Ins. Co. v. Cleveland (Tex.Com.App.) 86 S.W.(2d) 217. We therefore overrule the assignment under consideration and hold that the evidence authorized the submission and supports the finding of the jury, to the effect that the defendant accepted the check for $4 in settlement of the extension fees due June 4 and July 4, 1933.

In harmony with what has heretofore been said, we overrule the assignments urged by the defendant to the action of the court in overruling its motion for an instructed verdict, and in overruling its motion for judgment non obstante veredicto.

Statement has heretofore been made that Miss Lunney testified that when she received the $4 check July 11, 1933, she addressed to the insured a letter inclosing a short form application for reinstatement. Defendant assigns error on the action of the court in excluding the letter in question. Paragraph 1 of the letter acknowledged receipt of the remittance of $4, being the amount of the extension fees due June 4th and July 4th, stating that the policy lapsed on June 16, 1933, the expiration date of the grace period. In paragraph 2 she wrote: "We shall be very glad to reinstate you in full if you will fill out the inclosed short form of application for reinstatement, date it, sign and return to us"; and in paragraph 3, she wrote: "We are holding the proceeds of this remittance in trust waiting the consideration and final disposition of an application for reinstatement." The contention of defendant is that this letter, written at the time and under the circumstances, was admissible as res gestae.

The court offered to admit all of the letter, except the third or last paragraph, but defendant declined the offer, and in so doing, we think precluded itself from complaining except as to the exclusion of the third paragraph. This paragraph states that the proceeds of the remittance were being held in trust, awaiting final disposition of an application for reinstatement. If the court erred in excluding paragraph 3, the error, in our opinion, was cured and rendered harmless by testimony to the same effect by Miss Lunney. She testified, without objection, as follows:

"Q. When you received that check, what disposition was made of it? A. It was in payment of extension fees.

"Q. I say, what disposition did you make of the check? A. I deposited it and the proceeds were in trust. * . *

"Q. Did you send anything along with it? A. I sent a short form application for reinstatement, and that was to be returned and the matter was referred to the home office."

Thus, we think the substance of the excluded paragraph was put in evidence by the testimony of Miss Lunney on her Q. and A. examination. But aside from this, in view of the unequivocal acts of defendant in accepting the check in payment of over-due extension fees and in appropriating the proceeds to its own use and benefit, the

third paragraph of the letter was self-serving and at variance with the legal implications arising from defendant's conduct. We overrule this contention.

It is also insisted that, as both the policy and the extension agreement expressly provide that only an executive officer of the company could waive any of the terms of the contracts, the acts of Miss Lunney, in accepting the check and appropriating its proceeds to the use and benefit of defendant, were not binding upon the company, and did not waive any of the terms and provisions of the contract.

Both the policy and extension agreement contain the provision set forth in the proposition just quoted. We think it obvious that these provisions were for the benefit alone of the defendant and, of course, could be waived, either expressly or impliedly. As to Watlington, manager of the renewal department of the company, who is not named as one of defendant's executive officers, clearly the provisions above mentioned were waived, as his business was chiefly to grant extensions and effectuate renewals of lapsed policies. As to Miss Lunney, she described her duties as follows: "I occupy the position of Cashier with the Colorado Life Company, and have held that position for three years last April. I was holding such position in July 1933 (Statement of facts page 113) * * * I came to Dallas from Denver, Colorado. They sent me down here as Cashier of this office. By Cashier's office, I mean an office where remittances are paid by the Texas policy holders; they are sent to our office or to the home office. I deposit such premiums to the credit of the Colorado Life Company, and send a report of this to the Home Office twice a week. My official title is Cashier * * * (Statement of facts pages 116-117). I deposited this check in the noon deposit of July 12th. I have my deposit slip here with me, and it shows that on that date the Colorado Life Company got credit for $240.92 of which the $4.00 Dewey B. Taylor's was a part (Statement of facts pages 120–121). The majority of premiums are paid by checks, and when I receive them I deposit them direct to the account of the Colorado Life Company. As a rule premiums are sent in to us by mail. This is satisfactory with the Company for them to be sent in by mail, and it is the rule, and has been for sometime. I take the checks and deposit them to the credit of the Colorado Life Company and sign the receipt." De-fendant also supplied her with short form applications for the reinstatement of lapsed policies; thus, we think it appears that the company established a branch office in Dallas, in charge of an agent called "cashier," clothed with authority to collect premiums, receipt therefor, and deposit same to the credit of the company in a local bank; in other words, the cashier in charge of the branch office was authorized to perform duties and exercise the authority of an executive officer.

In Dunken v. Ætna Life Ins. Co., 221 S. W. 691, 696, the Austin Court of Civil Appeals said: "It is competent for an insurance company to stipulate in the policy, as here, that a waiver may be accomplished only through the acts or conduct of executive officers, but that stipulation itself may be waived by the company, and a waiver may result by acts of its agents authorized or acquiesced in by such officers. The acts of the agents then become the acts of the company, notwithstanding the statute, which was enacted for the benefit of such companies." With reference to a similar situation presented in American Nat. Ins. Co. v. Bailey, 3 S.W.(2d) 539, 543, the Waco Court of Civil Appeals said: "It is true the policy prohibited the agent Bridges from waiving any provision of the policy, but appellant is a corporation, and can act only through its officers and agents, and any officer or agent empowered to act for it in respect to a particular matter is the representative of the company in that behalf, and his acts, done within the scope of his powers, are binding upon the company." To the same effect, the Fort Worth Court of Civil Appeals, in American Nat. Ins. Co. v. Cleveland, 52 S.W.(2d) 327, 331, said: "And in this connection we will add that the provisions in the policies attempting to deny all agents of the company authority to waive forfeitures or to receive premiums on policies in arrears more than four weeks, or to receipt for the same, are unenforceable as against the plea of waiver and estoppel; since the act of the agent within the scope of his employment at the date of the act will bind the principal." Also see Home Benefit Ass'n v. Catchings (Tex.Civ.App.) 38 S.W.(2d) 386.

The defendant largely relies upon the case of The Prætorians v. Krusz (Tex.Com. App.) 58 S.W.(2d) 27, 29. The Krusz Case, in our opinion, is readily distinguishable from the case under consideration; the difference is shown by the court, in distin-

guishing the Krusz Case from other cases similar to the instant case, the court said: "The difference between those cases and the one at bar is that there the payments were received unconditionally, whereas, here the payments were not received unconditionally, but more in the nature of a deposit subject to approval of the supreme authority, for it is expressly stated in the very receipts which evidence the payments and conditioned on which such payments were received by the recorder, that such payments were received 'upon the condition and agreement that he or she,' meaning the insured member, 'has no claim whatever upon the order, until said member's application for reinstatement is accepted by the Supreme Senate.' If not accepted, then the amount of the receipt is to be refunded to said member." We overrule the contention that the acts of Miss Lunney were not binding upon the company.

Under a single proposition, defendant presents several errors assigned on the argument of counsel for plaintiff, contending that the same were unauthorized and prejudicial. After a careful consideration of the entire record relating to these assignments, we do not think reversible error is shown. The excerpts from the argument complained of, in our opinion, were legitimate deductions from the evidence and within the bounds of permissible argument.

 Error is also assigned on the action of the court in awarding attorney's fees alleged to be patently excessive, in that, the only testimony on the issue was based upon the theory of a contingent recovery. Tested by the amount of attorney's fees approved as reasonable in similar cases, we find no fault with the verdict and judgment in this respect. The amount of the policy sued upon is $2,000, $500 was allowed for services of the attorneys preceding and including the trial, and $250 for necessary services required, if the case should be appealed, making a total of $750. In American Central Life Ins. Co. v. Alexander (Tex.Civ.App.) 39 S.W. (2d) 86, a fee of $750 was held reasonable in a suit on a policy for $2,000; in American Nat. Ins. Co. v. Bailey (Tex.Civ.App.) 3 S. W.(2d) 539, $300 was held reasonable in a suit on a policy for $504; in United States Fidelity & Guaranty Co. v. Hardeman (Tex. Civ.App.) 22 S.W.(2d) 1112, $250 was held reasonable in a suit on a policy for $675; in Southern Surety Co. v. Calhoun (Tex.Civ. App.) 44 S.W.(2d) 459, $1,500 allowed in a suit on a policy for $1,988 was held excessive, but that $750 was reasonable, and requiring a remittitur of $750, the court affirmed the judgment; and in Grand Lodge, etc., v. Ware (Tex.Civ.App.) 73 S.W.(2d) 1076, $1,250 was held reasonable in a suit on a policy for $2,700. So we conclude that the amount of attorney's fees allowed in the instant case is not a larger percentage than allowances heretofore made and approved in other similar cases.

We are not unmindful of the language of Judge Critz in Southland Life v. Norton (Tex.Com.App.) 5 S.W.(2d) 767, 768, who, after quoting the controlling statute, said: "This means such a fee as would be reasonable for a litigant himself to pay his own attorney for prosecuting the case and not a speculative or contingent fee based upon the uncertainty of the litigation. As applied to the case at bar, it is the purpose and object of the statute to allow the plaintiff a reasonable sum for a competent attorney, or firm of attorneys, to represent him in the case and prosecute the litigation, and the statute does not contemplate a fee for more than one attorney or firm of attorneys"; neither are we unmindful of the statute itself (article 4736, R.S. as amended by Acts 1931, c. 91, § 1 [Vernon's Ann.Civ. St. art. 4736]) which provides that the right of a plaintiff to attorney's fees is based upon the contingency of recovering judgment on the policy; and after reading in full the testimony of Mr. Ross Huffmaster, the only witness examined on this issue, we are inclined to the opinion that his answers, in response to cross-interrogatories, to the effect that, the amount of attorney's fees testified to, considered by him as contingent, were based upon his knowledge of the statute that allows attorney's fees only on the contingency of a successful suit on the policy. The record discloses that he was a lawyer of twenty-five years' experience, familiar with such litigation, and, after inspecting the record, gave the testimony as hereinbefore stated. We therefore approve the verdict of the jury, as to attorney's fees, but aside from their findings, from our own experience and knowledge as lawyers and judges, after an examination of the entire record, we approve the amount allowed as reasonable.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.