## COLORADO LIFE CO. v. TEAGUE.
### No. 1771.

Court of Civil Appeals of Texas. Eastland.
March 25, 1938.

On Rehearing June 3, 1938.

Cox & Hayden, of Abilene, for appellant.

Childers & Shaw, of Abilene, for appellee.

LESLIE, Chief Justice.

Mrs. Earl L. Teague instituted this suit against the Colorado Life Company, a corporation and old line life insurance company, to recover insurance on the life of her deceased husband, attorney's fees, penalties, etc., aggregating $1,060. The defendant answered by general demurrer, general denial, and as special matters of defense alleged: (1) That John D. Sullivan, purporting to act as agent of the company in taking application for the insurance, was not in fact the agent of the company and had no authority to take the application or deliver a receipt for premium, etc.; (2) that the deceased never in fact paid to said Sullivan the first year's premium in cash and in full, the same being $13.78, that by reason thereof the purported receipt was null and void; (3) that Earl L. Teague, deceased, was not a standard life insurance risk at the date of the application and receipt, as represented by him; (4) that he did not state in his application all the diseases for which he had been recently treated, as required in the application; (5) that immediately upon receipt of the application for insurance the company on March 25, 1936, registered to the deceased a letter informing him that his application for insurance was rejected and that such notice was given him prior to his death; (6) that if said policy had been issued to him in accordance with the application, it could not have been delivered to him in his lifetime and during good health, since he

was at the time the company received the application sick with influenza and meningitis, with which he died.

It is unnecessary to state other defenses. The trial was before the court and jury, and upon the answers of the latter, to special issues a judgment was rendered in favor of the plaintiff for the insurance in the amount of $500, $225 as a reasonable attorney's fee, and $60 as 12 per cent penalty provided by statute, costs of suit, etc.

In answer to the special issues, the jury found (1) that the alleged agent, John D. Sullivan, was on March 11, 1936, the date of the application and the receipt, paid in cash $13.78, the first annual premium in full; (2) that on said date Earl L. Teague "was a standard life risk for insurance"; (3) that on said date said Sullivan was the agent of the Colorado Life Company; (4) that a reasonable attorney's fee for plaintiff's attorney was $225; (5) that if the Colorado Life Company had, upon receipt of the application of Earl L. Teague, issued a policy in a reasonable time, it would have reached said Teague before the beginning of his last sickness; and (6) that said Teague, in his application for insurance, did not fail to state all diseases that he knew he had been suffering with.

The correctness of the judgment based upon the verdict is challenged under eighteen different propositions of law. The first and second, and in fact the third, fourth and eighteenth, present the contention that the court erred in overruling its general demurrer to the plaintiff's petition. It is asserted that the plaintiff's pleadings failed to state the kind of insurance contract sought to be recovered upon and the terms and conditions of the same. The plaintiff's suit is based upon an alleged contract, evidenced by the application for insurance, and upon the terms of what is designated a "binding receipt" for the full cash payment, March 11, 1936, of the first annual premium. The receipt contains this provision:

"If, according to the company's rules and requirements, the applicant was age 45 or under and insurable as a standard risk on the date of the application to which this receipt was attached and said 'first payment' has been paid in cash, then in such an event such insurance not in excess of $2500 shall be in force from the date of the payment of said money."

In the left hand margin of the "binding receipt" is found the following:

"No. 72046A

"If settlement for all * * * of the 'First Payment' is made with the application, this receipt is to be completed accordingly and given to the applicant; otherwise, this receipt must not be detached."

The theory of the appellee's case is that on March 11, 1936, when the application was signed and the "binding receipt" delivered to the deceased, he was under 45 years of age, insurable as a standard risk under the terms of an ordinary life insurance policy, that the full amount of the first year's premium being paid and the defendant company not having brought home to applicant any notice that it had rejected his application prior to the death of the deceased March 29, 1936, the contract of insurance evidenced by the application and receipt matured in favor of the beneficiary for the sum of $500, etc. On the other hand, it is the appellant's contention that the binding effect of the receipt was conditional in that its liability, if any, was predicated upon its acceptance of the application and issuance and delivery of a policy thereunder.

To reflect more accurately the nature of plaintiff's suit in the light of appellant's contentions, a further and more detailed statement from the record or the pleading will be made. March 11, 1936, the deceased, Earl L. Teague, made his written application to said company for an "ordinary life" insurance "policy" in the amount of $500, making his wife beneficiary. The application is in usual form, containing many questions and answers by the applicant. First "policy premium" was stated to be $13.78 for twelve months. The premium "settlement" was stated to be "cash."

Earl L. Teague died about noon March 29, 1936. No regular insurance policy was issued to him pursuant to the application. Pertinent features of the application are as follows:

"I understand and agree that the 'first policy premium' * * constitute the 'first payment' under the policy and that the 'first policy premium' is for the period (therewith indicated) beginning the first day of the first policy year. * * * I further agree that the policy and application which includes the statements and answers over my signature in part II hereof and otherwise made in connection hereto shall constitute the entire contract between

the parties hereto and that no statement or answer, no matter to whom made, not in this application (including said part II) shall bind the company and that any insurance issued on account of this application will not be in force unless the 'first payment' required under the policy be duly made and the policy be duly delivered during my lifetime and continued good health. Whereupon the policy shall relate back to and take effect as of its date unless otherwise indorsed thereon. I understand that only an executive officer of the company in writing can make, modify or discharge contracts of insurance or waive any of the company's requirements, and that none of these acts can be done by any person other than aforesaid, and that knowledge or information of the agent taking this application or any other person whomsoever relating to my insurability which is not contained herein shall not be imputed to the company. I further agree that my acceptance of any policy issued on account of this application whether or not at the rate, upon the form, plan or for the amount now applied for, will constitute a ratification by me of any change in said rate, form, plan and/or amount or correction in or addition to this application (including said part II hereof) made by the company, copy of which attached to or indorsed on the policy shall constitute a sufficient notice to me thereof. A policy delivered to me or my representative and not returned to the company for cancellation within seven days after such delivery shall constitute and be deemed an acceptance by me.

"If within a reasonable time after making this application I am not advised in writing by the executive officer of the company that this application has been received I agree to write the company at Denver, Colorado, by registered mail, and state that I have not been so advised. *I understand the receipt attached hereto with its printed provisions unaltered, is the only receipt authorized by the company in connection herewith.*" (Italics ours.)

Following the above is a statement by the insurance agent, John D. Sullivan, to the defendant company, as follows:

"Colorado Life Company.

"I have taken settlement for the 'first payment' of this application, as follows: Cash $13.78 * * *. I have known the applicant for eight years * * *."

In the agent's report (answering numerous questions) he states in answer to Question 7, viz., "Does applicant's appearance indicate good health and strong constitution? A. Excellent." "10. Do you recommend issuing to the applicant a policy at standard rates? A. Yes."

The agent certifies to the truthfulness and correctness of his answers above. The same is of date March 11, 1936. The so-called "binding receipt" was attached to the foregoing application for insurance, and upon the payment of the first year's premium in full, as alleged, it was detached and delivered to Earl L. Teague, the insured. That receipt is to the tenor following:

"Note: No other form of receipt, nor alteration of this one, for payment of premium under application to which the receipt was attached will be recognized by the company. The agent taking said application is not authorized to accept payment for any but 'First Payment' (including short term premium, if any) and this receipt is not valid for any other.

"Received on account of the application (bearing date and number hereof) to the Colorado Life Company (herein called Company) Denver, Colorado, of Earl L. Teague (herein called applicant) for insurance of $500 face amount, settlement as follows: Cash $13.78 * * account of 'first payment' defined in said application. Said 'First Payment' is made subject to the conditions of said application, and particularly the conditions quoted in substance on the reverse side hereof. If, according to the company's rules and requirements, the applicant was age 45 or under, and insurable as a standard risk on the date of the application to which this receipt was attached and said 'First Payment' has been paid in cash, *then in such an event such insurance, not in excess of $2,-500 shall be in force from the date of the payment of said money;* otherwise the insurance will not go into force unless and until said 'First Payment' be duly made and the policy be duly delivered during the lifetime and continued good health of the applicant; in either event the policy shall relate back to and take effect as of its date, unless otherwise indorsed thereon. Nothing herein shall be deemed to prevent the company from disapproving said application. This receipt will not be binding upon the company if issued for any sum other than that declared by the applicant in said application to have been paid."

Signed "John D. Sullivan, Agent of the Colorado Life Company." (Italics ours.)

██ We are of the opinion that the appellee's construction of the contract, evidenced by the receipt and application, is supported by sound authority. Preliminary contracts for insurance are common and sustained by the courts. Reynolds v. Northwestern Mut. Life Ins. Co., 189 Iowa 76, 176 N.W. 207; Gardner v. North State Mut. L. Ins. Co., 163 N.C. 367, 79 S.E. 806, 48 L.R.A.,N.S., 714, Ann.Cas. 1915B, 652; Cooksey v. Mutual Life Ins. Co., 73 Ark. 117, 83 S.W. 317, 108 Am.St. Rep. 26.

The rule of law is stated in Mohrstadt v. Mutual Life Ins. Co., 8 Cir., 115 F. 81. It is likewise held in Starr v. Mutual Life Ins. Co., 41 Wash. 228, 83 P. 116, that such temporary insurance is effective until superseded by a policy, when issued, or terminated by a rejection of the application and notice to the insured of such action. The provision of the "binding receipt" first quoted above stipulated that in event the applicant was 45 or under, an insurable risk on that date, and that if the first annual premium was paid in full, then the insurance "shall be in force from the *date of the payment of said money.*" In this same connection, the receipt stated:

"Otherwise, the insurance will not go into force unless and until said first payment be duly made and the policy be duly delivered during the lifetime and continued good health of the applicant * * *."

This language is clear and unambiguous and would not seem to be open to construction.

In Albers v. Security Mutual Life Ins. Co., 41 S.D. 270, 170 N.W. 159, a case quite similar to this one, it was held that it could be fairly inferred from the terms of the "binding receipt" that there was an agreement for present insurance. The receipt and application in the instant case present a stronger one for present insurance. It was said of the "binding receipt" in the Albers Case (page 160):

"If the company did not intend that there should be insurance effective pending the date of the application and the date of the approval of the risk and the issuance of the policy, then the company would be charging and obtaining the full amount of the premium for one year, while the period of actual insurance would be as many days less than one year as there were days intervening between the date of the appli-

cation and the approval. This would not be dealing honestly with the insured."

██ Concerning the nature and legal effect of such receipt, we quote as following from the notes to the opinion in DeCesare v. Metropolitan Life Ins. Co., 81 A.L.R. 335:

"But notwithstanding the fact that it lies within the power of the insurer to avoid liability under a conditional receipt by rejecting the application, there remains for consideration the effect of such receipt after there has been an acceptance of the application. Such effect is stated in the opinion in Union Central Life Ins. Co. v. Robinson [5 Cir.] 148 F. 358, 8 L.R.A.,N.S., 883, as follows:

"'With the application only submitted to the company, to effect insurance it required its acceptance and the issuance and delivery of a policy. The *binding receipt changed this. If it is controlling, it required by its terms only its approval and acceptance by the company to effect insurance.*'" (Italics ours.)

The law pertaining to preliminary or temporary contracts of insurance of the type here involved is briefly stated in 32 C.J. p. 1099, sec. 183, as follows:

"For sake of convenience, contracts of insurance sometimes exist in two forms: (1) A preliminary contract intended to protect the applicant pending investigation of the risk by the company or until the policy can be properly issued. (2) The final contract or policy itself. This preliminary contract is of the greatest importance, for if the applicant could not be made secure until all the formal documents were issued and delivered, the beneficial effect of the insurance system would be greatly impaired. To be binding as a contract of insurance, a preliminary contract must be one for present insurance and not merely an agreement to insure at some future time, as on acceptance of an application or on the issuance or delivery of a policy. There must be both an agreement and a consideration for present binding insurance of a temporary nature. There must be a meeting of the minds of the parties on all of the essential elements of the contract; but it is not essential that there be a specification on all the details to be embodied in the final contract."

A careful consideration of the terms of the application and the "binding receipt" in the light of the authorities cited convinces us that a contract was effected between the

parties providing for temporary life insurance for the deceased from the time of the issuance of the binding receipt until the issuance of the policy by the company or a rejection of the application. As will be hereinafter noticed, neither event took place within a reasonable time or within the lifetime of the deceased.

Further, the receipt was attached to the application, and under the instructions of the company and as stated in the receipt, it was not to be delivered unless the first year's premium was paid in cash and in full. Upon compliance with that provision, as found by the jury, the receipt was made out and delivered to the assured.

If the "binding receipt" in the instant case does not mean what we have construed it, then the contract or that particular provision appears to be worthy of the comment referring to a like provision found in Francis v. Mutual Life Ins. Co. of New York, 55 Or. 280, 106 P. 323, reading as follows (page 327):

"The clause seems to be a mere trick on the part of the insurance company to deceive the applicants into the belief that they have temporary insurance, and thereby induce them to part with their money in advance of the issuance of the policy."

There is nothing in this record to indicate that the appellant contemplated any such deception. We do not believe it was incorporated in the receipt "to enable the insurance company to collect premiums for a period during which there was in fact no insurance and consequently no risk." Starr v. Mutual Life Ins. Co., 41 Wash. 228, 83 P. 116, 117.

Believing that the authorities cited present the rules of law applicable to the facts of this case and that the pleadings fairly interpreted state a cause of action thereunder, we for the reasons assigned, overrule all the assignments urged by the appellant to the action of the trial court in overruling the general demurrer and exceptions to the pleadings. We deem the pleadings sufficient to state a cause of action under the terms of an ordinary life insurance policy, as contemplated by the application and the "binding receipt."

The instruments referred to as "binding receipts" differ in their terms and legal effect in the various cases. The question always arises: What is the contract in a given case? In this one we hold that it provided for temporary or preliminary insurance.

The issue of the insurability of the applicant on the date of the delivery to him of the "binding receipt" is by the contract made one test of the company's liability. The jury's answer to issue No. 2 resolved that question in favor of the appellee.

True, no policy was issued to the deceased during his lifetime, but neither was there any notice brought home to him that his application was rejected so as to set at naught or bring to a conclusion the temporary insurance provided by the "binding receipt." Discussing the duty of the insurance company to give such notice in a proper case, it was said in Mohrstadt v. Mutual Life Ins. Co., supra (115 F. page 85):

"With reference to this proposition, it may be said that we have already intimated our opinion that it would have been necessary to notify the deceased of the rejection of his application, provided it had entered into a contract with him for temporary insurance until his application was acted upon * * *."

Likewise, it was held in Starr v. Mutual Life Ins. Co., supra, that such insurance is effective until superseded by a policy, when issued, or terminated by a rejection of the application and notice to the insured. The appellant in its answer alleged the giving of such notice, but if the evidence raised any such defensive issue it was not submitted by the court to the jury nor was any issue in that respect requested by the defendant. This would work a waiver of such defense under the authority of Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183; Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849, 857; Harris v. Leslie, 128 Tex. 81, 96 S.W.2d 276; Wichita Valley Ry. Co. v. Minor, Tex.Civ.App., 100 S.W.2d 1071.

The propositions directed to the failure of the court to give an instructed verdict on such grounds are overruled.

There is no showing that the appellee, Mrs. Teague, was the agent of the deceased husband to receive such notice of rejection of the application, nor is there any finding that she in fact did so. She denied receiving same.

In the deceased's application for insurance he designated his wife to be beneficiary, stating her name to be Zola E. Keith

Teague. His wife institutes this suit as Mrs. Earl L. Teague, alleging herself to be the wife of deceased and the beneficiary in the insurance contract. The pleadings and testimony clearly identify the plaintiff as the beneficiary intended. The testimony is conclusive.

■ We think that there was no error in the court's refusal to define the word "agent" as used in issue No. 3. There is nothing in the record to indicate the use of the word was in a technical or legal sense, rather than in a common and ordinary sense. The record reflects no reasonable "necessity" for the explanation or definition of the word. Art. 2189, R.S.1925; General Motors Acceptance Corp. v. Killingsworth, Tex.Civ.App., 54 S.W.2d 266.

Several other propositions present the contention that the answers of the jury to various issues were against the great weight and overwhelming preponderance of the evidence. We do not so appraise the testimony. The evidence was conflicting and sufficient to support the verdict. These assignments are overruled.

Other assignments not specifically discussed have been duly considered and are overruled.

The finding of the jury that $225 was a reasonable attorney's fee for plaintiff's counsel does not present any error under the facts of this case. We would not hold it excessive under the following authorities and others which might be cited: American Nat. Ins. Co. v. Gonzalez & Co., Tex.Civ. App., 72 S.W.2d 388; Gibralter Colorado Life Company v. Taylor, Tex.Civ.App., 99 S.W.2d 1084; Southern Surety Co. v. Calhoun, Tex.Civ.App., 44 S.W.2d 459; National Life Ins. Co. v. Mouton, 113 Tex. 224, 252 S.W. 1040; Connecticut General Life Ins. Co. v. Bertrand, Tex.Com.App., 65 S. W.2d 279.

For the reasons assigned, the judgment of the trial court is affirmed.

### On Rehearing.

In response to appellant's rather vigorous motion for rehearing we have again studied this record in the light of the contentions presented in said motion. We think the original opinion makes it sufficiently clear that the contract of insurance, forming the basis of this litigation, was not conditioned upon the approval of the risk at a later date by the company or the final issuance and delivery of the policy while the appellee's husband was in good health, etc.

The contract involved in this litigation is not evidenced by the usual policy contract for none was executed and delivered. The rights here claimed were predicated upon a contract providing for temporary insurance and evidenced by what is called a "binding receipt", which put in operation, in favor of the deceased, or his beneficiary, insurance in the amount of $500, provided "the applicant was age 45 or under, and insurable as a standard risk on the date of the application to which this receipt was attached, and said first payment * * * paid in cash, then *in such an event such insurance* * * * shall be in force *from the date of the payment of said money* * * *." (Italics ours.)

We are not dealing with what is generally known as a "conditional receipt" or what is less frequently called a "conditional binding receipt." Commonly there is found in this type of receipt, and in some instances duplicated in the application, a provision to the effect that the insurance shall be considered as in force from the date of the receipt, or the date of the medical examination, provided the application is approved and accepted at the home office of the insurer. Of course, such an instrument is ineffectual to provide protection to the applicant until the application is approved or rejected.

■ Plaintiff, by pleading and proof, assumed the burden of establishing the conditions prerequisite to recovery. That is reflected by the verdict of the jury, as supplemented by the court's findings on the undisputed testimony. The binding receipt itself evidences the authority of the agent to detach and deliver the same upon the condition that "First Payment" was made in full.

■ We recognize the rule of law "that a life insurance company is at liberty to choose its own risks, and may accept or reject those who apply to it for insurance as it may see fit", as held in American Life Ins. Co. v. Nabors, 124 Tex. 221, 76 S.W.2d 497, 498, but that rule has no application here, for, as stated, the insurance rights asserted rest upon a contract for temporary insurance for the interim or period of time between the *date* of the binding receipt and the *date* on which the company might approve the application, issue and deliver the policy, or reject the risk and cancel the application, etc.

■ Rights and liabilities under the terms of an insurance policy which may or may not have been delivered are not involved. Neither are we concerned with the rule, supported by the great weight of authority, that mere delay in passing upon an application for insurance cannot be considered an acceptance thereof by the insurer. Northwestern Mut. Life Ins. Co. v. Neafus, 145 Ky. 563, 140 S.W. 1026, 36 L.R.A.,N.S., 1211.

■ The evidence is undisputed that the deceased's age was under 45 years, at the date the binding receipt was delivered to him (March 11, 1936) and that he died the following March 29. The defendant alleged by way of special defense that it gave notice to said Teague in his lifetime, as well as his wife, that the company was "canceling" his application for insurance because Mr. Sullivan was not the agent of the company "at the time he took [the] application." The wife denied these allegations as for herself and if there is any evidence that such information never reached the deceased in his lifetime it is circumstantial only. There is some indication that a registered letter from the company containing such information was received by some member of the Teague family at their post office after the death and burial of Earl L. Teague. However, this may be, and conceding that there was some evidence that such notice was brought home to them in his lifetime, no such issue was submitted by the trial court and the defendant requested none. As stated in the original opinion, this would amount to a waiver of the issue. This is material upon the duty of the defendant, under the circumstances, and we are in accord with the appellant's view of the law relative thereto as stated in its brief on page 35. viz., "The law in this State is that, when a binding receipt is given, that if notice of the rejection of the application for insurance is brought home to the insured, or his agent, before his death, that there is no liability on the part of the insurance company." In this connection, we quote from 81 A.L.R. 336, as follows:

" 'Where the provision in a receipt is construed as providing temporary protection until such time as the insurer has considered the application and announced its determination to accept or reject the risk, the insurer cannot terminate the risk so assumed otherwise than by notice brought home to the insured in his lifetime that his application was rejected. Mohrstadt v. Mutual L. Ins. Co. * * [8 Cir.] 115 F. 81.

" 'Such insurance is effective until superseded by a policy, when issued, or terminated by a rejection of the application and notice to the insured. Starr v. Mutual L. Ins. Co. * * [41 Wash. 228] 83 P. 116.' "

These authorities were cited and discussed in our original opinion.

As we construe the contract it provides temporary insurance. There is nothing legally wrong or immoral about the contract, whether viewed from the stand point of the company, the deceased or the beneficiary. If the language found in the binding receipt means anything at all, it means that such temporary insurance was provided. It was to the advantage of the applicant to have it, and the fact that the company could extend it, was no doubt a strong talking point in persuading Teague to take the insurance and pay the premium in full, which the jury found he did. As acknowledged by the attorneys for the respective litigants, no Texas authority directly in point seems to be available. We believe, however, that the authorities cited announce the principles of law applicable to the facts of the case.

The appellant raises the question that the contract for $500 insurance would in no event be such contract as would authorize the recovery of attorney's fees and penalty under the provisions of Art. 4736, R.S.1925, Vernon's Ann.Civ.St. art. 4736. That statute reads: "In all cases where a loss occurs and the life insurance company, * * * liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay *the holder of such policy,* in addition to the amount of the loss, twelve per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss." (Italics ours.)

■ Considering the nature of the contract upon which this suit is predicated, we have, after due consideration, concluded that the attorney's fees and penalties are not recoverable under that provision of the statute. It has often been held that this statute is highly penal and must be strictly construed. Washington Fidelity Nat. Ins. Co. v. Williams, Tex.Com.App., 49 S.W.2d 1093. Numerous authorities cit-

ed under note "1a" to Art. 4736, supra. The contract in 'suit is not a "policy" of insurance. It is a contract of insurance preliminary to insurance under a policy as such. As analogous we cite DeCesare v. Metropolitan Life Ins. Co., 278 Mass. 401, 180 N.E. 154, 81 A.L.R. 327, where it was held, as indicated by point 4 of the syllabus, that "Statutes which by their terms relate to 'any policy' of insurance have no application to temporary contracts to insure pending the issuance and delivery of a policy or other formal contract of insurance." No penalty was involved in that case, and hence it would appear that for an even greater reason the penalty and attorney's fees should be rejected in the instant case.

For the reasons assigned the appellant's motion for rehearing is granted in part and overruled in part. However, the judgment hereinbefore entered pursuant to the original opinion will be set aside in toto, and judgment will now be rendered upon the original opinion, supplemented by this one, and in conformity to them. It is so ordered.